IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

IN THE MATTER OF:

Inspection of the workplace
located at and near:                                    Case No. 8:22MJ416

9405 Western Plaza
Omaha, Nebraska 68114

under the control or custody of:

PETERSON PROPERTIES, INC.

**APPLICATION FOR ADMINISTRATIVE SEARCH WARRANT UNDER
THE OCCUPATIONAL SAFETY AND HEALTH ACT OF 1970**

TO THE HONORABLE UNITED STATES MAGISTRATE JUDGE:

I,  Nicolas Senior, Assistant Area Director of the Omaha Area Office, Occupational

Safety and Health Administration, United States Department of Labor, hereby apply for

an administrative search warrant, pursuant to section 8(a) of the Occupational Safety and

Health Act of 1970, 29 U.S.C. §§ 651-678, 657(a), hereinafter referred to as the OSH

Act, for the inspection, investigation, and search of the work place located at 9405

Western Plaza, Omaha, Nebraska 68114, and described as the work place where the

Peterson Properties, Inc., is engaged in  the management of apartment buildings,

including leasing, maintenance, and housekeeping duties.

　　　1.　　　This workplace is the place of occupation of employees who are employed

by Peterson Properties.

　　　2.　　　The authority for issuance of the administrative search warrant is section

8(a) of the OSH Act and Marshall v. Barlow's, Inc., 436 U.S. 307, 98 S.Ct. 1816 (1978).

3.      Sections 8(a)(1) and 8(a)(2) of the OSH Act specifically authorize the Secretary of Labor to make inspections and investigations of any factory, plant, establishment, construction site, or other area, workplace, or environment where work is performed by an employee of an employer.  Sections 8(a)(1) and 8(a)(2) are implemented in part by Chapter 9 of the Field Operations Manual (FOM), CPL 02-00-164 (hereinafter "CPL 02-00-164"), attached hereto as Exhibit A and incorporated herein.

4.      Paragraph I.A.1.a of CPL 02-00-164 defines a formal complaint as written and signed notice from a current employee or employee representative that there exists in the workplace an imminent danger, a violation of the OSH Act, or a violation of an OSHA standard, which exposes employees to a potential physical or health harm.  Ex. A, CPL 02-00-164, para. I.A.1.a.   Following receipt of such notice, an inspection is warranted if at least one of the listed criteria is met.  Ex. A, CPL 02-00-164, para I.C.  In this case, an inspection is warranted on two criteria.  First, a complaint was submitted by an employee representative that provides reasonable grounds to believe there exists violations of the OSH Act that expose employees to physical harm.  Ex. A, CPL 02-00-164, para. I.C.1.  Second, the complaint concerns an establishment and an alleged hazard covered by a local, regional, or national emphasis program.  Ex. A, CPL 02-00-164, para I.C.4.

5.      The warrant sought hereby is based upon the following facts and circumstances:  On July 8, 2022, OSHA received an anonymous message via OSHA's electronic complaint system. The message provided contact information for the complainant including, a phone number, address, and email address. The complainant checked the signature box indicating this was formal signed complaint. The complaint stated: "Covid 19 outbreak in office, management failed to sanitize or inform the rest of the employees about effected areas."  After receiving the online complaint form, a Safety and Health Compliance Officer ("CSHO") called the phone number listed on the form and reached the complainant on July 12, 2022.  The complainant identified themselves as

a representative of an employee of Peterson Properties, Inc., who worked at the location at issue. The Complainant confirmed by phone that the office had experienced a Covid-19 outbreak, and that management had failed to sanitize the office or inform employees about other infected employees. The CSHO was then contacted by the employee who confirmed the representative was authorized to file a complaint on their behalf. See Exhibit B, Complaint.[1]

6.      Additionally, an inspection is warranted when the complaint information concerns an establishment and an alleged hazard covered by a local, regional, or national emphasis program. Ex. A, CPL 02-00-164, para. I.C.4.  Peterson Properties is an establishment covered by the National Emphasis Program –Revised National Emphasis Program – Coronavirus Disease 2019 (hereinafter "DIR 2021-03 CPL 3"), attached hereto as Exhibit C and incorporated herein. DIR 2021-03 CLP 3 was renewed on June 30, 2022, via a national press release, attached hereto as Exhibit D and incorporated herein.  Per DIR 2021-03 CLP 03: "Allegations of potential worker exposures to SARS-CoV-2 (e.g., insufficient controls in place such as PPE), or involving workers suspected or confirmed positive for COVID-19, or with symptoms of exposure to the virus (e.g., fever or chills, shortness of breath or difficulty breathing), shall be treated as having priority for conducting an on-site inspection and the AD will exercise discretion in determining the order in which each establishment is assigned for inspection. "  Ex. C, DIR 2021-03 CPL 03, para XII.C.1.b, p. 10.

7.      Because of the continued potential for serious injury from COVID-19, the referral was treated as a high gravity serious complaint and scheduled for inspection in accordance with Ex. A, CPL 02-00-164, Chap. 9, para. I.H.3.

8.      On July 14, 2022, CSHO Haoming Jiang requested entry into the workplace at 9405 Western Plaza, Omaha, Nebraska 68114, to make an inspection of the

_____

[1] Said complaint has been purged of matters that might reveal the complainant's identity as he or

circumstances surrounding the complaint. The CSHO spoke to local management, Kerry Vanrooyan, Regional Property Manager, who then called a corporate representative. After talking to the unknown corporate representative, Ms. Vanrooyan, informed the CSHO the office was closed due to COVID, and the CSHO could not enter the premises or interview employees, thereby denying CSHO Jiang the ability to conduct the inspection.

9.     It is requested that the warrant authorize the inspection and investigation of the conditions set forth above in paragraph 5, including information alleged in the complaint, and continuing COVID-19 related hazards, per Ex. C, DIR 2021-03 CPL 03, para. XII.D.  Further, the CSHO may expand the inspection beyond complaint and COVID-19 related hazards if other hazards or violations are observed during the walk-around or are documented in the OSHA 300 logs.

The inspection and investigation shall include review of all relevant records, files, and papers, and will be conducted during regular working hours or at other reasonable times, within reasonable limits, and in a reasonable manner, including the questioning privately of any employee or agent, and the taking of photographs, videotapes, environmental samples (including the use of personal sampling equipment), and measurements, including temperature measurements when necessary.  The CSHO's credentials will be presented, and the inspection and investigation will be commenced as soon as practicable after the issuance of this warrant and will be completed with reasonable promptness.

10.     Any information, including videotapes, photographs and environmental samples, obtained in connection with the inspection and that is designated to be a trade secret, as defined in 18 U.S.C. § 1905, shall be considered confidential, as provided in section 15 of the OSH Act, 29 U.S.C. § 664.

---

she has requested pursuant to section 8(f)(1) of the OSH Act, 29 U.S.C. § 657(f)(1).

I declare under penalty of perjury that the foregoing is true and correct.

Nicolas Senior
Assistant Area Director
Occupational Safety and Health Administration
United States Department of Labor

Subscribed and sworn to before me via telephone or other reliable electronic means on this ___20th___ day of ___July___, 2022.

MICHAEL D. NELSON
United States Magistrate Judge

STEVEN A. RUSSELL
Acting United States Attorney

Laurie A. Kelly
Assistant U.S. Attorney
MA Bar # 557575
1620 Dodge Street
Suite 1400
Omaha, Nebraska 68102
Telephone No.  (402) 661-3700
Laurie.Kelly@usdoj.gov

OF COUNSEL:

OF COUNSEL:

Seema Nanda
Solicitor of Labor

Christine Z. Heri
Regional Solicitor
IL Bar #6204656

Evert H. Van Wijk
Associate Regional Solicitor
PA Bar #44047

Rachel Parsons
MO Bar #36906
KSD #13991
Senior Trial Attorney

2300 Main Street, Suite 10100
Kansas City, MO 64108
(816) 285-7260
(816) 285-7287 (fax)
parsons.rachel@dol.gov

Attorneys for Martin J. Walsh
Secretary of Labor
United States Department of Labor

Field Operations Manual (FOM)  /  Chapter 9

# Chapter 9

## COMPLAINT AND REFERRAL PROCESSING

I. **Safety and Health Complaints and Referrals**.

   A. **Definitions**.

      1. **Complaint**.

Notice of an alleged safety or health hazard (over which OSHA has jurisdiction), or a violation of the Act. There are two types; formal and non-formal.

        a. **Formal Complaint**.

Complaint made by a current employee or a representative of employees that meets all the following requirements:

- Asserts that an imminent danger, a violation of the Act, or a violation of an OSHA standard exposes employees to a potential physical or health harm in the workplace;
- Is reduced to writing or submitted on a Complaint (OSHA-7); and
- Is signed by at least one current employee or employee representative.

        b. **Non-formal Complaint**.

Any complaint alleging a safety or health violation(s) that does not meet all the requirements of a formal complaint identified above and does not come from one of the sources identified under the definition of Referral, below.

      2. **Inspection**.

An on-site examination of an employer's worksite conducted by an OSHA compliance officer, initiated as the result of a complaint or referral, and meeting at least one of the criteria identified in Section C, Criteria Warranting an Inspection, below.

      3. **Inquiry**.

A process conducted in response to a complaint or a referral that does not meet one of the identified inspection criteria as listed in Section C. It does not involve an on-site inspection of the workplace but, rather, the employer is notified of the alleged hazard(s) or violation(s) by telephone, fax, email, or by letter, if necessary. The employer is then requested to provide a response, and OSHA will notify the complainant of that response through appropriate means.

      4. **Electronic Complaint**.

A complaint submitted through OSHA's public website. All complaints submitted via OSHA's public website are initially considered non-formal.

See Chapter 9 Section I.E.5, to determine when electronic complaints are to be considered formal.

      5. **Permanently Disabling Injury or Illness**.

An injury or illness that has resulted in permanent disability, work-related injury, or an illness that is chronic or irreversible. Permanently disabling injuries or illnesses include, but are not limited to: amputation, blindness, a standard threshold shift in hearing, lead or mercury poisoning, paralysis or third-degree burns.

      6. **Referral**.

An allegation of a potential workplace hazard or violation received from one of the sources listed below:

        a. CSHO referral – information based on the direct observation of a CSHO.

**EXHIBIT A**

b. Safety and health agency referral – from sources including, but not limited to: NIOSH, state programs, consultation, and state or local health departments, as well as safety and/or health professionals in other federal agencies.

c. Discrimination or Whistleblower complaint referral – made by a whistleblower investigator when an employee alleges that he or she was retaliated against for complaining about safety or health conditions in the workplace, refusing to do an allegedly imminently dangerous task, engaging in other activities related to occupational safety or health or for raising concerns under any of the federal anti-retaliation statues that OSHA enforces. See the Whistleblower Statutes Desk Aid for more information.

d. Other government agency referral – made by other federal, state, or local government agencies or their employees, including local police and fire departments.

e. Media report – either news items reported in the media or information reported directly to OSHA by a media source.

f. Employer/Employer Representative report – of accidents other than fatalities and catastrophes.

7. **Representative of Employees**.

Any of the following:

a. An authorized representative of the employee bargaining unit, such as a certified or recognized labor organization.

b. An attorney acting for an employee.

c. Any other person acting in a bona fide representative capacity, including, but not limited to, members of the clergy, social workers, spouses and other family members, and government officials or nonprofit groups and organizations acting upon specific complaints and injuries from individuals who are employees.

NOTE: The representative capacity of the person filing complaints on behalf of another should be ascertained unless it is already clear. In general, the affected employee should have requested, or at least approved, the filing of the complaint on his or her behalf.

B. **Classifying as a Complaint or a Referral**.

Whether the information received is classified as a complaint or a referral, an inspection of a workplace is normally warranted if at least one of the conditions in Section C, Criteria Warranting an Inspection, is met.

C. **Criteria Warranting an Inspection**.

An inspection is normally warranted if at least one of the conditions below is met (but see also Section I.D, of this chapter, Scheduling an Inspection of an Employer in an Exempt Industry):

1. A valid formal complaint is submitted. Specifically, the complaint must be reduced to writing or submitted on a Complaint (OSHA-7 or OSHA Online Complaint Form), be signed by a current employee or representative of employees, and state the reason for the inspection request with reasonable particularity. Additionally, there must be reasonable grounds to believe either that a violation of the Act or OSHA standard that exposes employees to physical harm exists, or that an imminent danger of death or serious injury exists, as provided in Section 8(f)(1) of the Act.

2. The information received in a signed, written complaint from a current employee or employee representative that alleges a recordkeeping deficiency that indicates the existence of a potentially serious safety or health violation.

3. The information alleges that an imminent danger situation, a violation of the Act or of an OSHA standard exists, that exposes employees to a potential serious physical or health hazard in the workplace.

4. The information concerns an establishment and an alleged hazard covered by a local, regional, or national emphasis program (such as the Site-Specific Targeting Plan).

5. The employer fails to provide an adequate response to an inquiry, or the individual who provided the original information provides further evidence that the employer's response is false or does not adequately address the hazard(s). The evidence must be descriptive of current or recurring hazardous conditions.

6. The establishment that is the subject of the information has a history of egregious, willful, failure-to-abate, or repeated citations within the Area Office's jurisdiction during the past five years, or is an establishment or related establishment in the Severe Violator Enforcement Program. However, if the employer has previously submitted adequate documentation for these violations, demonstrating that they were corrected and that programs have been implemented to prevent a recurrence of hazards, then the Area Director will normally determine that an inspection is not necessary.

7. The Whistleblower Protection Program requests that an inspection be conducted in response to an employee's allegation that the employee was discriminated against for complaining about safety or health conditions in the workplace, refusing to perform an allegedly dangerous job or task, or engaging in other activities related to occupational safety or health.

8. If an inspection is scheduled or has begun at an establishment and a complaint or referral that would normally be handled through inquiry is received, then this complaint or referral can, at the Area Director's discretion, be incorporated into the scheduled or ongoing inspection. If such a complaint is formal, then the complainant must receive a written response that addresses the complaint items.

9. If the information gives reasonable grounds to believe that an employee under 18 years of age is exposed to a serious violation of a safety or health standard or a serious hazard, then an on-site inspection will be initiated if the information relates to construction, manufacturing, maritime, agriculture, or other industries as determined by the Area Director. Limitations placed on OSHA's activities in agriculture by Appropriations Act provisions will be observed. See CPL 02-00-051, Enforcement Exemptions and Limitations under the Appropriations Act, May 28, 1998. A referral to Wage and Hour should also be initiated.
   NOTE: The information does not need to allege that a child labor law has been violated.

D. **Scheduling an Inspection of an Employer in an Exempt Industry**.
   In order to schedule an inspection of an employer in an exempt industry classification as specified by Appropriations Act provisions (See CPL 02-00-051, *Enforcement Exemptions and Limitations under the Appropriations Act*, May 28, 1998), one of the following conditions must be met:

   1. The information must come directly from a current employee; OR
   2. It must be determined and documented in the case file that the information came from a representative of the employee (see Section I.A.7 of this chapter, Representative of Employees), with the employee's knowledge of the representative's intended action.

E. **Electronic Complaints Received through the OSHA Public Website**.

   1. Electronic complaints submitted through the OSHA public website are automatically forwarded by email to a designated Area Office in the appropriate state. That office then forwards the electronic complaints to the appropriate Area Office in the state.
   2. Each Area Office manages a "Complaints" mailbox and processes electronic complaints according to internal complaint processing procedures. The complaints mailbox is monitored daily and every incoming complaint is reviewed for jurisdiction.
      a. If the complaint falls within the jurisdiction of the Area Office, then the complaint is entered into OIS and processed as usual. b. If the complaint falls within the jurisdiction of another Area

Office, the complaint is forwarded appropriately.

3. Area Offices will coordinate with State Plan states to establish procedures to process electronic complaints. The state establishes its own internal procedures for responding to such complaints. These procedures can be the state's usual procedures for handling unsigned complaints or they can include some further coordination with the complainant prior to action. In State Plan states, the Federal Monitoring Office will screen the complaints unless there is another arrangement. If the complaint falls within the individual State Plan's jurisdiction, then the Screening Office will follow the procedures developed with the State Plan for processing the complaint.

4. Complete a Complaint (OSHA-7) for all complaint information received. In order to facilitate the tracking of electronic complaints, please enter the electronic complaint number in the Receipt/Activity Info tab when applicable.

5. Electronic complaints where a current employee has provided their name and checked the "This constitutes my electronic signature" box shall be considered as a formal complaint and processed accordingly.

6. All complaint-related material received electronically should be printed and date-stamped with the date indicating when the material was submitted and received. When these dates are not the same, the Area Director will determine the appropriate date for the incoming material.

F. **Information Received by Telephone**.

1. While speaking with the caller, OSHA personnel will attempt to obtain the following information:
   a. Whether the caller is a current employee or an employee representative.
   b. The exact nature of the alleged hazard(s) and the basis of the caller's knowledge. The individual receiving the information must determine, to the extent possible, whether the information received describes an apparent violation of OSHA standards or the OSH Act.
   c. The employer's name, address, email address, telephone and fax numbers, as well as the name of a contact person at the worksite.
   d. The name, address, telephone number, and email address of any union and/or employee representative at the worksite.

2. As appropriate, OSHA will provide the caller with the following information:
   a. Describe the complaint process, and if appropriate, the concepts of "inquiry" and "inspection," as well as the relative advantages of each.
   b. If the caller is a current employee or a representative of employees, explain the distinction between a formal complaint and a non-formal complaint, and the rights and protections that accompany filing a formal complaint. These rights and protections include: . The right to request an on-site inspection.
      ▪ Notification in writing if an inspection is deemed unnecessary because there are no reasonable grounds to believe that a violation or danger exists.
      ▪ The right to obtain review of a decision not to inspect by submitting a request for review in writing.

3. Information received by telephone from a current employee is considered a non-formal complaint until that individual provides a signed copy of the information. The employee can mail, email, or fax a signed copy of the information, request that a Complaint (OSHA-7) be sent, or sign the information in person at the Area Office. Normally a complainant has five working days to formalize an electronic complaint.

4. If appropriate, inform the complainant of rights to confidentiality in accordance with Section 8(f)(1) of the Act for private sector employees, and Executive Order 12196 for federal employees, and ask whether the complainant wishes to exercise this right. When confidentiality is requested, the identity of the complainant is protected regardless of the formality of the complaint.

    5. Explain Section 11(c) rights to private sector employees and employees of the U.S. Postal Service, or reprisal and discrimination protection provided by Executive Order 12196, §1960.46 and the Whistleblowers Protection Act of 1989 to federal employees. See Chapter 13, Section III.E for reports of reprisal or discrimination from federal employees.

G. **Procedures for Handling Complaints Filed in Multiple Area Offices or Regions**.

    1. When a Regional Office determines that multiple offices within the Region have received the same complaint or, if the Regional Office suspects that the same complaint has been filed in multiple Regions, the Regional Office should contact the Director or Deputy Director of the Directorate of Enforcement Programs (DEP).

    2. DEP will query all 10 Regions and coordinate with the Directorate of Cooperative and State Programs to query the State Plan states to determine whether similar complaints were filed in multiple offices.

        a. If multiple Regions have received the same complaint, then the National Office will address the complaint with the employer.

        b. Area Offices should indicate in OIS that these complaints have been transferred to the National Office.

H. **Procedures for an Inspection**.

    1. Upon receipt of a complaint or referral, the Area Director or designee will evaluate all available information to determine whether there are reasonable grounds to believe that a violation or hazard exists.

        a. If necessary, reasonable attempts will be made to contact the individual who provided the information in order to obtain additional details or to clarify issues raised in the complaint or referral. See the Complaint Questionnaire beginning on page 9-13.

        b. The Area Director can determine not to inspect a facility if he/she has a substantial reason to believe that the condition in the complaint is being or has been abated.

    2. Despite the existence of a complaint, if the Area Director determines that there are no reasonable grounds to believe that a violation or hazard exists, then no inspection or inquiry will be conducted.

        a. Where a formal complaint has been submitted, the complainant will be notified in writing of OSHA's intent not to conduct an inspection, the reasoning behind the determination, and the right to have the determination reviewed under §1903.12. The justification for not inspecting will be noted in the case file.

        b. In the event of a non-formal complaint or referral, if possible, the individual providing the information will be notified by appropriate means of OSHA's intent not to conduct an inquiry or inspection. The justification for not inspecting or conducting an inquiry will be noted in the case file.

    3. If the information contained in the complaint or referral meets at least one of the inspection criteria listed in Section I.C of this chapter, Criteria Warranting an Inspection, and there are reasonable grounds to believe that a violation or hazard exists, the Area Office is authorized to conduct an inspection.

        a. If appropriate, then the Area Office will inform the individual who has provided the information that an inspection will be scheduled and that he or she will be advised of the results.

        b. After the inspection, the Area Office will send the complainant a letter addressing each information item, with reference to the citation(s) or a sufficiently detailed explanation for why a citation was not issued.

    4. If an inspection is warranted, it will be initiated as soon as resources permit. Inspections resulting from formal complaints of serious hazards will normally be initiated within five working days of formalizing.

5. As a general rule, the scope of a complaint/referral inspection must bear an appropriate relationship to the alleged violative conditions. The CSHO must have probable cause to expand the inspection beyond the violations alleged in the complaint/referral. See Chapter 3, Section III, Inspection Scope, and Chapter 15, Section III, Obtaining Warrants, for more information.

I. **Procedures for an Inquiry**.

1. If the complaint or referral does not meet the criteria for initiating an onsite inspection, then an inquiry will be conducted. OSHA will promptly notify the employer about the complaint or referral and its allegation(s), and fax or email a confirming letter.

2. If a non-formal complaint is submitted by a current employee or a representative of employees that does not meet any of the inspection criteria, then the complainant can be given five working days to make the complaint formal.

   a. The complainant can come into the Area Office and sign the complaint, or mail, email, or fax a signed complaint letter to OSHA. A Complaint (OSHA-7) can also be mailed or faxed to the complainant, if appropriate.

   b. If the complaint is not made formal after five working days, after making a reasonable attempt to inform the complainant of the decision, OSHA will proceed with the inquiry process.

3. The employer will be advised of what information is needed to answer the inquiry and encouraged to respond by fax or email. See Chapter 13, Federal Agency Field Activities, for differing federal agency procedures. Employers are encouraged to do the following:

   a. Immediately investigate and determine whether the complaint or referral information is valid and make any necessary corrections or modifications.

   b. Advise the Area Director either in writing by email or fax within five working days of the results of the investigation into the alleged complaint or referral information. At the discretion of the Area Director and depending on the circumstances, the response time can be longer or shorter than five working days. Also, although the employer is requested to respond within the above time frame, the employer may not be able to complete abatement action during the above timeframe, the employer should be encouraged to do so.

   c. Provide the Area Director with supporting documentation of the findings, including any applicable measurements or monitoring results, and photographs and/or videos that the employer believes would be helpful, as well as a description of any corrective action that the employer has taken or is in the process of taking.

   d. Post a copy of the letter from OSHA where it is readily accessible for review by all employees.

   e. Return a copy of the signed Certificate of Posting to the Area Office.

   f. If there is a recognized employee union or safety and health committee in the facility, provide them with a copy of OSHA's letter and the employer's response.

4. As soon as possible after contacting the employer, a notification letter will be faxed to the employer, or mailed where no fax is available. Sample letters to complainants and employers are provided in OIS. Note that some of these letters are for private sector use and some are for federal agency use. If email is an acceptable means of responding, then this should be indicated in the notification letter and the proper email address should be provided.

5. If no employer response or an inadequate employer response is received after the allotted five working days, additional contact with the employer can be made before an inspection is scheduled. If the employer provides no response or an inadequate response, or if OSHA determines from other information that the condition has not been or is not being corrected, then an inspection will be scheduled.

6. The complainant will be advised of the employer's response, as well as the complainant's rights to dispute that response and, if the alleged hazard persists, of the right to request an inspection. When

OSHA receives an adequate response from the employer and the complainant does not dispute or object to the response, an onsite inspection normally will not be conducted.

7. If the complainant is a current employee or a representative of employees and wishes to dispute the employer's response, the disagreement must be submitted in writing and signed, thereby making the complaint formal.

   a. If the employee disagreement takes the form of a written and signed formal complaint, then see Section I.H of this chapter, Procedures for an Inspection.

   b. If the employee disagreement does not take the form of a written and signed formal complaint, then some discretion is allowed in situations where the information does not justify an on-site inspection. In such situations, the complainant will be notified of OSHA's intent not to conduct an inspection and the reasoning behind the determination. This decision should be thoroughly documented in the case file.

8. If a signed complaint is received after the complaint inquiry process has begun, then the Area Director will determine whether the alleged hazard is likely to exist based on the employer's response and by contacting the complainant. The complainant will be informed that the inquiry has begun and that the complainant retains the right to request an on-site inspection if he/she disputes the results and believes that the hazard still exists.

9. The complaint must not be closed until OSHA verifies that the hazard has been abated.

10. The justification for not conducting an inquiry will be noted in the case file.

J. **Complainant Protection**.

   1. **Identity of the Complainant**.

      a. Upon request of the complainant, his or her identity will be withheld from the employer in accordance with Section 8(f)(1) of the Act. No information will be given to the employer that would allow the employer to identify the complainant.

      b. Generally, names and other personally identifiable information of employees will not be included in the warrant application. Where employees' names or other personally identifiable information appear in affidavits and other supporting documents attached to the warrant application, such information must be redacted. Where inclusion of the employee's name is necessary, Area Offices should consult with RSOL about filing the warrant application under seal.

   2. **Whistleblower Protection**.

      a. Section 11(c) of the Act provides protection for employees who believe that they have been the subject of an adverse employment action in retaliation for engaging in activities related to workplace safety or health. Any employee who believes that he or she has been discharged or otherwise retaliated against by any person as a result of engaging in such activities can file a whistleblower complaint. The complaint must be filed within thirty (30) days of the discharge or other retaliation.

      b. Complainants should always be advised of their Section 11(c) rights and protections upon initial contact with OSHA and whenever appropriate in subsequent communications.

   3. **Recording in OIS**.

Information about complaint and referral inspections or inquiries must be recorded in OIS following the current instructions outlined in the FOM. Referrals reported by the employer will be recorded in OIS following the guidance provided in the Memorandum entitled, *Revised Interim Enforcement Procedures for Reporting Requirements under 29 C.F.R. 1904.39*, dated March 4, 2016, or unless superseded by future Agency-approved correspondence.

II. **Whistleblower Complaints**.

A. OSHA enforces the whistleblower or anti-retaliation provisions of the OSH Act and 21 other other federal statutes. These anti-retaliation statutes protect employees who report violations of various

workplace safety and health, airline, commercial motor carrier, consumer product, environmental, financial reform, food safety, health insurance reform, motor vehicle safety, nuclear, pipeline, public transportation agency, railroad, maritime, and securities laws. The statutes generally prohibit employers from discharging or otherwise retaliating against their employees for exercising their rights under these statutes. In particular, under Section 11(c) of the OSH Act, these rights include filing an OSHA complaint, participating in an inspection or talking to an inspector, seeking access to employer exposure and injury records, reporting an injury, and raising a safety or health complaint with the employer. A desk reference summarizing these statutes can be found at www.whistleblowers.gov.

B. When a whistleblower complaint is made under any of the federal whistleblower statutes enforced by OSHA other than the OSH Act, the complainant should be referred promptly to the Assistant Regional Administrator for Whistleblower Protection Programs because the requirements for filing complaints under those statutes can vary from those of the OSH Act. They should also be advised that there are statutory deadlines for filing these complaints.

C. In the context of an OSHA enforcement action or a consultation activity, the complainant will be advised of the protection against retaliation afforded by Section 11(c) of the Act. A Section 11(c) complaint can be in any form, including an oral complaint made to a CSHO. Thus, if a person alleges that he or she has suffered an adverse action because of activity protected under Section 11(c), CSHOs will record that person's identifying information and the date and time of this initial contact on an OSHA-87 form and forward it to the Assistant Regional Administrator for Whistleblower Protection Programs for processing.

D. In State Plan states, employees can file occupational safety and health retaliation complaints with Federal OSHA, the state, or both. Federal OSHA normally refers such complaints to the State Plan states for investigation. OSHA's Whistleblower Manual outlines the Agency's referral/deferral policies for such complaints.

III. **Decision Trees**.

A. See tree on page 9-12 for OSHA enforcement action or consultation activity when information is obtained in writing.

B. See tree on page 9-14 for OSHA enforcement action or consultation activity when information is obtained orally.

**From:**    Complaint@dol.gov
**To:**    OSHA - Complaints - OMAHA (F164)
**Subject:**    43466872 EMPLOYEE COMPLAINT
**Date:**    Friday, July 8, 2022 6:08:51 PM

Please contact Prefers to remain anonymous  via

███████████

Mailing Address
------------------------------------

██████████████
███
███████████████

Email:██████████████████

within 5 working days of 08-JUL-22.

Below is the complaint information
==================================================

------------------------------------------------------------

NEBRASKA

Omaha Area Office
444 Regency Parkway Drive, Suite 303
Omaha, Nebraska 68114
(402) 553-0171
(402) 551-1288 FAX
(800) 642-8963 Toll Free - Nebraska Only

------------------------------------------------------------

Establishment Name:          Peterson properties
Site Street:          9405 Western Plaza, Omaha, NE 68114
Site City:          Omaha
Site State:          Nebraska
Site Zip:          68114

Hazard Description:
------------------------------------------------------------
Covid 19 outbreak in office, management failed to sanitize or inform the rest of the employees about effected areas
------------------------------------------------------------

Hazard Location:
------------------------------------------------------------
Main office
------------------------------------------------------------

This condition has previously been brought to the attention of:
* The employer

Exhibit B

██████ Prefer to remain anonymous

Do NOT reveal my name to my employer.

Complainant Name:              Prefers to remain anonymous   [SIGNED]
  (Complainant checked the electronic signature checkbox
  to indicate this submission shall be considered as having
  an authorized written signature.)

Complainant Telephone Number|        ████████

Complainant Mailing Address
-------------------------------------
████████████████

Complainant Email:        ████████████████



# OSHA DIRECTION

**U.S. DEPARTMENT OF LABOR** — **Occupational Safety and Health Administration**

| **DIRECTIVE NUMBER:** DIR 2021–03 (CPL 03) | **EFFECTIVE DATE:** July 7, 2021 |
|---|---|
| **SUBJECT:** Revised National Emphasis Program – Coronavirus Disease 2019 (COVID-19) | |

**\*\*NOTE: Minor changes {in brackets} were made to this directive on August 30, 2021, to update public health guidance for field offices. These changes do not impact this directive's enforcement policy.**

## ABSTRACT

**Purpose:** This revised Direction describes policies and procedures for implementing a National Emphasis Program (NEP) to ensure that employees in high-hazard industries or work tasks are protected from the hazard of contracting SARS-CoV-2 (severe acute respiratory syndrome coronavirus 2), the cause of Coronavirus Disease 2019 (COVID-19). The NEP augments OSHA's efforts addressing unprogrammed COVID-19-related activities, *e.g.*, complaints, referrals, and severe incident reports, by adding a component to target specific high-hazard industries or activities where this hazard is prevalent. The NEP targets establishments that have workers with increased potential exposure to this hazard, and that puts the largest number of workers at serious risk. In addition, this NEP includes an added focus to ensure that workers are protected from retaliation, and are accomplishing this by preventing retaliation where possible, distributing anti-retaliation information during inspections, and outreach opportunities, as well as promptly referring allegations of retaliation to the Whistleblower Protection Program.

**Scope:** This Direction applies OSHA-wide.

**References:** Presidential Executive Order on Protecting Worker Health and Safety, January 21, 2021.

Federal Register, 86 FR at 32376, 29 CFR § 1910, *Emergency Temporary Standard for COVID-19*; *Final Rule*, June 21, 2021.

OSHA Direction, DIR 2021-02 (CPL 02), *Inspection Procedures for the COVID-19 Emergency Temporary Standard*, June 28, 2021.

Section 5(a)(1) of the Occupational Safety and Health Act (OSH Act), 29 U.S.C. § 654.

ABSTRACT - 1

Exhibit C

OSHA Instruction, CPL 02-00-164, *Field Operations Manual (FOM)*, April 14, 2020.

(See Section III for additional references.)

| | |
|---|---|
| **Cancellations:** | OSHA Direction, DIR 2021-01 (CPL-03), National Emphasis Program – Coronavirus Disease 2019 (COVID-19), March 12, 2021. |
| **State Plan Impact:** | Federal Program Change, Notice of Intent Required, Equivalency Required.  See Section VI. |
| **Action Offices:** | OSHA Regional and Area Offices, State Plan and OSHA On-Site Consultation programs |
| **Originating Office:** | Directorate of Enforcement Programs, Office of Health Enforcement |
| **Contact:** | Directorate of Enforcement Programs<br>Office of Health Enforcement<br>200 Constitution Avenue, NW, Room N3119<br>Washington, DC 20210 |

By and Under the Authority of

JAMES S. FREDERICK
Acting Assistant Secretary

ABSTRACT - 2

## Executive Summary

On January 21, 2021, by executive order, President Biden directed the Secretary of Labor, acting through the Assistant Secretary of Labor for Occupational Safety and Health, to launch a national program to focus OSHA enforcement efforts related to Coronavirus Disease 2019 (COVID-19) on hazardous conditions that put the largest number of workers at serious risk, and on employers that engage in retaliation against employees who complain about unsafe or unhealthful conditions or exercise other rights under the Act.

This Direction describes policies and procedures for implementing a National Emphasis Program (NEP) to ensure that employees in high-hazard industries are protected from the hazard of contracting SARS-CoV-2 (severe acute respiratory syndrome coronavirus 2), the cause of COVID-19.  The NEP augments OSHA's efforts addressing unprogrammed, COVID-19-related activities, *e.g.*, complaints, referrals, and severe incident reports, by adding a component targeting specific high-hazard industries or activities where this hazard is prevalent.  The NEP targets establishments that have workers with increased potential exposure to this hazard.  In addition, this NEP includes an added focus to ensure that workers are protected from retaliation and are accomplishing this by preventing retaliation where possible, distributing anti-retaliation information during inspections, and outreach opportunities, as well as promptly referring allegations of retaliation to the Whistleblower Protection Program.

This revised NEP cancels the original NEP issued on March 12, 2021, due to the issuance of OSHA's emergency temporary standard (ETS) for COVID-19 in healthcare.  Additionally, the targeting strategy is being refined to focus programmed inspections on the healthcare and non-healthcare sectors most commonly encountered in OSHA COVID-19 enforcement activities from 2020 to approximately the first half of 2021.

## Significant Changes

This revised Direction describes an update to the COVID-19 NEP published on March 12, 2021. The following list highlights differences between this replacement NEP and the former NEP:

- This NEP incorporates the new ETS for COVID-19 in healthcare.

- Appendix B, which was the list of Secondary Target Industries for the former COVID-19 NEP, has been removed from the revised NEP.

- For healthcare inspections, this NEP refers compliance safety and health officers (CSHOs) to the new OSHA Direction, DIR 2021-02 (CPL 02), *Inspection Procedures for the COVID-19 Emergency Temporary Standard*, June 28, 2021.  For non-healthcare establishments, this NEP refers CSHOs to the Updated Interim Enforcement Response Plan, July 7, 2021.

# Table of Contents

I.      Purpose. ...................................................................................................................1

II.     Scope. .......................................................................................................................1

III.    References. ...............................................................................................................1

IV.    Cancellations. ..........................................................................................................2

V.     Action Offices. .........................................................................................................2

    A.   Responsible Office. ..........................................................................................2

    B.   Action Offices. .................................................................................................3

    C.   Information Offices. ..........................................................................................3

VI.    Federal Program Change. ........................................................................................3

VII.   Expiration. ................................................................................................................3

VIII.  Significant Changes. ................................................................................................3

IX.    On-Site Consultation Programs. ..............................................................................4

X.     Background. .............................................................................................................4

XI.    National Emphasis Program (NEP) Goal. ...............................................................6

XII.   Program Procedures. ...............................................................................................6

    A.   General. .............................................................................................................6

    B.   Site Selection. ...................................................................................................7

    C.   Inspection Scheduling. .....................................................................................9

    D.   Inspection Procedures. ...................................................................................13

    E.   CSHO Protection. ...........................................................................................16

    F.   OSHA Information System (OIS) Coding Instructions. ...............................17

    G.   Outreach. ........................................................................................................19

    H.   Coordination. ................................................................................................221

    I.   Program Review.............................................................................................222

Appendix A:  Target Industries for the COVID-19 NEP
Appendix B:  CSHO Pre-inspection Checklist
Appendix C:  General Safety & Health Inspection Precautions for Compliance Staff
Appendix D:  Sample Employer Letter to Corporate Offices for COVID-19 Activities
Appendix E:  Additional References

i

I.      Purpose.

This Direction describes policies and procedures for implementing a National Emphasis Program (NEP) to ensure that employees in high-hazard industries are protected from the hazard of contracting SARS-CoV-2 (severe acute respiratory syndrome coronavirus 2), the cause of Coronavirus Disease 2019 (COVID-19).  The NEP augments OSHA's efforts addressing unprogrammed, COVID-19-related activities, *e.g.*, complaints, referrals, and severe incident reports, by adding a component targeting specific high-hazard industries or activities where this hazard is prevalent.  The NEP targets establishments that have workers with increased potential exposure to this hazard, and that puts the largest number of workers at serious risk.  In addition, this NEP includes an added focus to ensure that workers are protected from retaliation and are accomplishing this by preventing retaliation where possible, distributing anti-retaliation information during inspections and outreach opportunities, as well as promptly referring allegations of retaliation to the Whistleblower Protection Program.

II.     Scope.

This Direction applies OSHA-wide.

III.    References.

A.      Presidential Executive Order on Protecting Worker Health and Safety, January 21, 2021. www.whitehouse.gov/briefing-room/presidential-actions/2021/01/21/executive-order-protecting-worker-health-and-safety.

B.      Federal Register, 86 FR at 32376, 29 CFR § 1910, *Emergency Temporary Standard for COVID-19*; *Final Rule*, June 21, 2021. www.gpo.gov/fdsys/pkg/FR-2021-06-21/pdf/2021-12428.pdf.

C.      OSHA Direction, DIR 2021-02 (CPL 02), *Inspection Procedures for the COVID-19 Emergency Temporary Standard*, June 28, 2021. www.osha.gov/enforcement/directives/dir-2021-02-cpl-02.

D.      Section 5(a)(1) of the Occupational Safety and Health Act (OSH Act), 29 U.S.C. § 654. www.osha.gov/laws-regs/oshact/section5-duties.

E.      OSHA Instruction, ADM 03-00-003, *OSHA Directives System*, December 11, 2000. www.osha.gov/enforcement/directives/adm-03-00-003.

F.      OSHA Instruction ADM 03-01-005, *OSHA Compliance Records*, August 3, 1998. www.osha.gov/enforcement/directives/adm-03-01-005.

G.      OSHA Instruction, ADM 04-00-003, *OSHA Safety and Health Management System*, May 6, 2020. www.osha.gov/enforcement/directives/adm-04-00-003.

H.      OSHA Instruction, CPL 01-00-158, *Inspection Procedures for the Respiratory Protection Standard*, June 26, 2014. www.osha.gov/enforcement/directives/cpl-02-00-158.

I.      OSHA Instruction, CPL 02-00-025, *Scheduling System for Programmed Inspections*, January 4, 1995. www.osha.gov/enforcement/directives/cpl-02-00-025.

J.      OSHA Instruction, CPL 02-00-051, *Enforcement Exemptions and Limitations under the Appropriations Act*, May 28, 1998 (including annually updated Appendix A). www.osha.gov/enforcement/directives/cpl-02-00-051.

K.      OSHA Instruction, CPL 02-00-164, *Field Operations Manual (FOM)*, April 14, 2020. www.osha.gov/enforcement/directives/cpl-02-00164.

L.      OSHA Instruction, CPL 02-01-062, *Site-Specific Targeting (SST)*, December 14, 2020. www.osha.gov/enforcement/directives/cpl-02-01-062.

M.      OSHA Instruction, CPL 02-02-054, *Respiratory Protection Program Guidelines*, July 14, 2000. www.osha.gov/enforcement/directives/cpl-02-02-054.

N.      OSHA Instruction, CPL 02-02-072, *Rules of Agency Practice and Procedure Concerning OSHA Access to Employee Medical Records*, August 22, 2007. www.osha.gov/enforcement/directives/cpl-02-02-072.

O.      OSHA Instruction, CPL 02-03-007, *Whistleblower Investigations Manual*, January 28, 2016. www.osha.gov/enforcement/directives/cpl-02-03-007.

P.      OSHA Memorandum, *Establishment-Targeting Lists for Emphasis Programs*, November 12, 2014. www.osha.gov/dep/enforcement/establishment_targeting_lists_11122014.

Q.      OSHA Memorandum, *Updated Interim Enforcement Response Plan for Coronavirus Disease 2019 (COVID-19)*, July 7, 2021. www.osha.gov/laws-regs/standardinterpretations/2021-07-07.

R.      OSHA Guidance, *Protecting Workers: Guidance on Mitigating and Preventing the Spread of COVID-19 in the Workplace* {, ~~January 29, 2021 (updated June 10, 2021)~~}. www.osha.gov/coronavirus/safework.

S.      OSHA Safety and Health Topics: Coronavirus Disease (COVID-19) (webpage). www.osha.gov/coronavirus.

T.      Centers for Disease Control and Prevention (CDC): COVID-19 (webpage). www.cdc.gov/coronavirus/2019-ncov.

See Appendix E for Additional References.

IV.     <u>Cancellations</u>.

    OSHA Direction, DIR 2021-01 CPL-03, National Emphasis Program – Coronavirus Disease 2019 (COVID-19), March 12, 2021.

V.      <u>Action Offices</u>.

A.      <u>Responsible Office.</u>

    Directorate of Enforcement Programs, Office of Health Enforcement

B.      <u>Action Offices.</u>

OSHA Regional and Area Offices, State Plan and OSHA On-site Consultation Offices

C.    <u>Information Offices</u>.

OSHA National Office.

VI.    <u>Federal Program Change</u>.

This Direction describes a federal program change that establishes an NEP to identify and reduce or eliminate exposures to SARS-CoV-2 (the virus), the cause of COVID-19, through inspection targeting, outreach, and compliance assistance.  This NEP references OSHA's *COVID-19 Emergency Temporary Standard (ETS)*, <u>29 CFR § 1910, subpart U</u>, (29 CFR 1910.502, *et seq.*), and OSHA Direction, <u>DIR 2021-02 (CPL 02)</u>, *Inspection Procedures for the COVID-19 Emergency Temporary Standard*.  State Plans are required to adopt a standard and enforcement policy that are at least as effective as OSHA's standard and enforcement directive.  Similarly, State Plans are required to adopt an NEP that is at least as effective as this NEP.

Within 15 days of the effective date of this Direction, a State Plan must submit a notice of intent indicating if the State Plan will adopt or already has in place policies and procedures that are identical to or different from, but at least as effective as the federal program.  State adoption, either identical or different, but at least as effective, should be accomplished within 30 days.  Under OSHA's regulation for Federal Program changes at 29 CFR 1953.4(b)(3), the date for adopting Federal Program changes is "generally" six months from the date of notification, but the Assistant Secretary may determine that "the nature or scope of the change requires a different time frame."  OSHA's Assistant Secretary has determined that the nature of OSHA's ETS requires that State Plans adopt this Direction within 30 days.

OSHA's Office of Statistical Analysis (OSA) will work with the State Plans to provide the data as requested to develop targeting lists in accordance with the instructions in <u>Section XII.B</u>.  OSHA will make the list(s) of establishments available to the State Plans.  See coding instructions for the OSHA Information System (OIS) in <u>Section XII.F</u>.

This Direction describes a change that may affect federal agencies.  Federal agencies that are subject to inspection and have employees exposed to hazards covered by this emphasis program are also included in this NEP.  *See* <u>FOM</u> Chapter 13, *Federal Agency Field Activities*.

VII.    <u>Expiration</u>.

This Direction is effective for no more than 12 months from the effective date, unless canceled or extended by a superseding directive.

VIII.    <u>Significant Changes</u>.

This Direction replaces the March 12, 2021 COVID-19 NEP.  This replacement NEP incorporates the new <u>ETS for COVID-19 in healthcare</u> and removes the former Appendix B, which was the list of Secondary Target Industries for the former COVID-19 NEP.  For healthcare inspections, this NEP refers compliance safety and health officers (CSHOs) to the new OSHA Direction, <u>DIR 2021-02 (CPL 02)</u>, *Inspection Procedures for the COVID-*

*19 Emergency Temporary Standard*, June 28, 2021, and for non-healthcare establishments, this NEP refers CSHOs to the OSHA Memorandum, *Updated Interim Enforcement Response Plan*, July 7, 2021.

IX.   On-Site Consultation Programs.

On-Site Consultation Programs are encouraged to develop their own strategic approaches for addressing the hazards associated with occupational exposure to SARS-CoV-2.  See coding instructions for the OIS in Section XII.F.

X.   Background.

The World Health Organization declared the COVID-19 pandemic on March 11, 2020. As the pandemic grew throughout the U.S., it impacted workplaces in virtually every industry and required employers, particularly those having workers in high-hazard industries (*e.g.*, healthcare and emergency response) to adopt certain practices to mitigate the hazard.  Workers' occupational exposure to SARS-CoV-2 during the pandemic may vary from community to community, depending on local conditions or outbreaks. Exposures may depend on a variety of factors including the physical environment of the workplace, the type of work activity, the health and/or vaccination status of the worker, the ability of workers to wear face coverings and abide by current CDC guidelines, and the need for close contact (within 6 feet for a total of 15 minutes or more over a 24-hour period) with other people, including those known to have or suspected of having COVID-19, and those who may be infected with—and able to spread—SARS-CoV-2 without knowing it.  Other factors, such as conditions in communities where employees live and work, their activities outside of work, and individual health conditions, may also affect workers' risk of getting COVID-19 and/or developing complications from the illness. OSHA and several public health agencies have developed recommendations to assist employers in preparing their workplaces to minimize transmission of the virus.

On April 12, 2020, OSHA issued an Interim Enforcement Response Plan for COVID-19 as a first step at establishing an emphasis on very high- and high-risk workplaces. Subsequently, OSHA issued Updated Interim Enforcement Response Plans for COVID-19 on May 19, 2020, and March 12, 2021, respectively.  On July 7, 2021, OSHA issued an Updated Interim Enforcement Response Plan, pursuant to the ETS.  OSHA's July 7, 2021, interim enforcement response plan memorandum provides updated instructions and guidance to Area Offices and CSHOs for handling COVID-19-related unprogrammed activities (UPA), *e.g.*, complaints, referrals, and severe incident reports and for conducting inspections of non-healthcare industries.  Inspection guidance for industries within the healthcare sectors that are covered by the ETS is provided in OSHA Direction, DIR 2021-02 (CPL 02), *Inspection Procedures for the COVID-19 Emergency Temporary Standard*.

This revised NEP focuses on COVID-19-related hazards and provides procedures for planned/programmed and follow-up inspections in workplaces where unvaccinated employees have a high frequency of close contact exposures. This NEP also reaffirms OSHA's adherence to longstanding inspection policy that relies predominantly on on-site (in person) presence for most inspections.  Modifications to that policy (*i.e.*, performance

4

of remote-only COVID-19 inspections) are reserved for limited circumstances and subject to Area Director's (AD) approval, as described in Section XII.C.1, below.

In May of 2021, approximately two months following the issuance of the COVID-19 NEP, the CDC issued updated guidance to align its COVID-19 recommendations with the increasing availability of COVID-19 vaccinations across the United States.  This precipitated a review of OSHA's COVID-19 enforcement posture, including the COVID-19 NEP.  Based on preliminary observations from the initial review of COVID-19 NEP inspections approximately three months following the initiation of the program, OSHA made appropriate adjustments to the NEP targeting scheme to better align with the changing environments and overall reduction of COVID-19-related risks in many industries.

The former COVID-19 NEP included two Master Lists from which CSHOs could be assigned establishments to target for programmed inspection activities.  Initially, the industries appearing on the Master Lists of local area offices were generated from NAICS codes within Appendix A and/or the former Appendix B in the COVID-19 NEP.  The former Appendix B was considered a secondary source of establishments that could supplement sites in industries that appeared in Appendix A, the primary targeting source.  Appendix A was comprised of healthcare industries and the non-healthcare sectors most commonly encountered in OSHA COVID-19 enforcement activities in 2020.  Industries in the former Appendix B were from the critical infrastructure sectors that, at the height of the pandemic, were considered to have elevated risks of exposure.  With the changing environment, and the increases in vaccination rate in the general population, the need for a very broad range of industries to target for COVID-19 has diminished.  As such, OSHA is appropriately modifying the scope of the programmed planned portion of the revised NEP.  When generating the Master Lists for Area Offices' use in targeting, OSHA will rely on using industries contained in the targeting tables of Appendix A.

A June 2021 review of NEP enforcement data for inspections from March 12, 2021, to June 3, 2021, showed that approximately 500 COVID-19 inspections had been conducted during this nearly three-month timeframe.  This accounted for about 8% of all OSHA inspections—an indication that, so far, the NEP goal of 5% of all inspections, was being met.  These COVID-19 inspections included both unprogrammed (64.4 percent) and programmed (35.6 percent) inspections.  The proportion of unprogrammed activities indicate OSHA's continued receipt of reported fatalities, hospitalizations, complaints, or referrals requiring the agency's attention.  The majority of establishments inspected thus far from the former NEP were from Appendix A, and the most predominant sectors reflected in those inspections were within the healthcare industry.  About 19% of the overall COVID-19 inspections were conducted at industries listed in Appendix B of the former NEP, and almost 90% of these inspections resulted from unprogrammed activities. This was an indication that industries within critical infrastructure were largely being inspected via unprogrammed activities.

While it is still early to report on the findings of most NEP inspections conducted thus far, the preliminary data shows that OSHA is addressing COVID-19-related hazards

across many industries.  OSHA will direct its resources to workplaces where employees are most exposed to COVID-19-related hazards.  As COVID-19 infection rates appear to continue declining over time, this revised NEP is being adjusted to focus OSHA's targeting efforts on industries with increased potential exposures to SARS-CoV-2.  Thus, industries within the former NEP's Appendix B are being deleted from this revised NEP.

XI.   NEP Goal.

The goal of this NEP is to significantly reduce or eliminate worker exposures to SARS-CoV-2 by targeting industries and worksites where unvaccinated employees may have a high frequency of close contact exposures and therefore, controlling the health hazards associated with such exposures.  This goal will be accomplished by a combination of inspection targeting, outreach to employers, and compliance assistance.

The goal of this NEP is to continue performing a high percentage of COVID-19 inspections (at least 5%) of the National Office's total inspection goal (which is approximately 1,600 inspections OSHA-wide), by focusing Agency resources on workplace exposures to SARS-CoV-2 in certain critical industries. Unprogrammed COVID-19-related inspections will continue to be prioritized for worksites where employees have potential exposures to COVID-19-related hazards.  OSHA anticipates that the majority of the inspections covered under this NEP will continue to occur in general industry, particularly in healthcare, based on current OSHA enforcement data showing higher COVID-19-related complaints, referrals and severe incident reports at healthcare worksites.

To ensure abatement and to monitor the effectiveness of OSHA's enforcement and guidance efforts, certain follow-up inspections from worksites previously inspected for COVID-19-related hazards will be included as part of the targeting strategy, as outlined in, Section XII.C.2, below.

XII.   Program Procedures.

A.   General.

Area Offices or Regional Offices are not required to develop a Local Emphasis Program (LEP) or Regional Emphasis Program (REP) for SARS-CoV-2.

Appendix A of this Direction provides lists of affected industries by their North American Industry Classification System (2017 NAICS) codes.  The lists in Appendix A include industries where workers may be at increased potential exposure to SARS-CoV-2, based on OSHA's 2020 and 2021 COVID-19 enforcement activities.  See Appendix A for more detailed information about the sources OSHA used to identify affected industries.

Establishments with fewer than 10 workers shall be included in this NEP.  *See* CPL 02-00-051, *Enforcement Exemptions and Limitations under the Appropriations Act.*

B.   Site Selection.

1.   Master List Generation.

For programmed inspections, the NEP will generate two Master Lists for site selection. Master List 1 will be comprised of establishments identified as having a NAICS code listed in Appendix A. Master List 2 will be comprised of establishments having a NAICS code listed in Appendix A and having an elevated illness rate as indicated by Form 300A data. Area Offices will use either list or a combination of the two lists to meet their inspection goals. The Office of Statistical Analysis (OSA) will use CY 2020 Form 300A data to identify establishments with elevated rates of illness. OSA will post randomized lists on the Area Offices ListGen page for download.

a.   Master List 1. Each Area Office will use the Establishment Targeting List–Generation System (ListGen) for generating a master list of establishments from Appendix A. Based on local knowledge, Area Offices may choose to rely predominantly on NAICS for healthcare industries in Table 1 of Appendix A. NAICS codes in Appendix A were derived from a review of OSHA's enforcement activities in 2020 and 2021. Refer to the OSHA Memorandum, Establishment-Targeting Lists for Emphasis Programs, November 12, 2014.

b.   Master List 2. The OSA will use CY 2020 Form 300A data to identify establishments with elevated rates of illness within healthcare (Appendix A, Table 1) and from high-hazard settings in non-healthcare (Appendix A, Table 2). OSA will post randomized lists on the Area Offices' ListGen page for download.

**NOTE 1:** Programmed inspections shall continue to be conducted using the already generated Master Lists from the March 12, 2021, COVID-19 NEP.

**NOTE 2**: Some industries within Appendix A, Table 1, *i.e.*, Offices of Physicians (except Mental Health Specialists) NAICS 621111, and Offices of Dentists NAICS 621210, and within Appendix A, Table 2, Postal Service NAICS 49910, Temporary Help Services NAICS 561320, Full-Service Restaurants NAICS 7224511, Limited-Service Restaurants NIACS 722513, and Correctional Institutions NAICS 922140, are not automatically included in the ListGen Infogroup. OSA has excluded these NAICS to avoid overwhelming Master Lists with the high numbers of establishments within those sectors. Area offices may continue to use discretion based on local information pertaining to COVID-19-related workplace exposures, to determine whether to add establishments within these sectors to their Master Lists (see Additions, below).

See Appendix A for additional information about how the various lists of NAICS codes are organized.

2.      Additions.

Area Offices may add establishments to the generated master lists (whether or not the NAICS of that establishment is listed in the appendix) based on information from appropriate sources (*e.g.*, local knowledge of establishments, commercial directories, referrals from the local health department, or from other federal agencies with joint jurisdictions, such as the Centers for Medicare & Medicaid Services (CMS) and the U.S. Department of Agriculture (USDA), media referrals or previous OSHA inspection history).

3.      Deletions.

Area Offices may delete from their target list any establishment that has had a comprehensive or partial health inspection that addressed COVID-19 hazards with an Opening Conference date occurring within the twelve (12) previous months and resulted in one of the following outcomes:

a.      Serious citations related to COVID-19 hazards which are under contest or for which the abatement period has not yet expired; or

b.      No serious citations were issued for hazards related to exposure to SARS-CoV-2; or

c.      Serious citation(s) were issued for hazards related to exposure to SARS-CoV-2, but a follow-up inspection documented appropriate and effective efforts by the employer to abate the serious hazards cited (*e.g.*, work practice or administrative controls in place, engineering controls installed).

Area Offices may also use discretion to delete establishments from the targeting lists based on local knowledge of the community and/or industry (*i.e.*, low rate of infection, high vaccination percentage, or work operations that have been modified to eliminate close contact exposures for unvaccinated employees).

**NOTE**: Area Directors may use discretion in scheduling an inspection at a previously cited establishment, inspected within the previous twelve (12) months, even though other-than-serious citations, Hazard Alert Letters or Notification Letters were issued related to exposure to SARS-CoV-2 as a result of the previous inspection.

Area Offices shall maintain documentation supporting any deletions made under this paragraph (*see* Section XII.B.5).

4.      Cycle Generation.

ListGen assigns random numbers and provides the Master List in random number order.  Acceptable methods for generating cycles can be found in the memorandum dated November 12, 2014, Establishment-Targeting Lists for Emphasis Programs.  Subsequent cycles will be created in the same manner until such time that this NEP is cancelled or until all

establishments on the list have been assigned to a cycle. Cycles may be created all at once or as necessary, and need not be of the same size.

**NOTE**: Area Offices may also add establishments to the ListGen Master List, based on sources that may include, but are not limited to: (a) commercial directories (*e.g.*, ReferenceUSA); (b) telephone listings; (c) local knowledge of establishments, derived from previous OSHA inspection history; and (d) information from other government agencies, such as the local Health Department. The Area Office must retain documentation of every addition made to the Master List and, prior to use, the revised List must be re-randomized -- either by OSA or by the Area Office using the RANDBETWEEN function in Microsoft Excel.

5.   Maintaining Inspection List/Cycles and Documentation.

The Area Director is responsible for maintaining documentation necessary to demonstrate that the Area Office has used the NEP inspection list and cycles in accordance with this Direction, including documenting all deletions, deferrals, or other modifications. The Area Office shall maintain all such inspection lists, cycles, and documentation for a period of three years after all inspections conducted under this NEP plan are closed. *See* CPL 02-00-025, *Scheduling System for Programmed Inspections*; and ADM 03-01-005, *OSHA Compliance Records.*

C.   Inspection Scheduling.

Within a specified cycle, inspections may be scheduled utilizing a phased approach. In most cases, in accordance with the FOM, the highest priority should be given to fatality inspections and then to other unprogrammed inspections (*i.e.*, complaints and referrals) alleging employee exposure to COVID-19 related hazards. Area Offices may schedule follow-up inspections related to COVID-19 hazards to contribute to meeting the goals of this NEP where unprogrammed activities have decreased enough to allow them to do so.

Where programmed inspections are being conducted, an inspection cycle shall be completed before another cycle is started, except that establishments may be carried over in accordance with established procedures.

Some establishments selected for inspection under this NEP may also be selected under other NEPs and/or LEPs, or under the current Site Specific Targeting (SST) Plan. Whenever possible, inspections under this NEP should be carried out concurrently with other programmed inspections.

1.   Unprogrammed Inspections.

Fatalities/Catastrophes, Complaints or Referrals for any general industry, maritime, or construction operation alleging potential exposures to SARS-CoV-2, whether or not they fall within a targeted industry of this NEP, shall be handled in accordance with the hierarchy of conducting inspections as outlined in FOM Chapter 9, *Complaint and Referral Processing*, and Chapter 11, *Imminent Danger, Fatality, Catastrophe, and*

9

*Emergency Response,* and in accordance with the specific procedures listed below:

a.    Fatalities/Catastrophes

Continue to prioritize COVID-19 fatality events for inspection. Particular attention for on-site inspections will be given to workplaces with a higher potential for COVID-19 exposures, such as hospitals, assisted living, nursing homes and other healthcare and emergency response providers treating patients with COVID-19, as well as workplaces with high numbers of COVID-19-related complaints or known COVID-19 cases.  These include, but may not be limited to, correctional facilities, and workplaces in critical industries located in communities with increasing rates of COVID-19 transmission, and where workers are in close proximity (<6 feet) to the public or coworkers, such as meatpacking plants, poultry processing facilities, and grocery stores.

b.    Complaints and Referrals

Allegations of potential worker exposures to SARS-CoV-2 (*e.g.*, insufficient controls in place such as PPE), or involving workers suspected or confirmed positive for COVID-19, or with symptoms of exposure to the virus (*e.g.*, fever or chills, shortness of breath or difficulty breathing), shall be treated as having priority for conducting an on-site inspection and the AD will exercise discretion in determining the order in which each establishment is assigned for inspection.

During all unprogrammed inspections, CSHOs must note the location of the workplace and the name and address of the employer(s) involved. Document the status and condition of the work operation, noting any potentially serious hazard(s).  Where possible, this should include information (such as the task or conditions of exposure) establishing any evidence of the likelihood of exposure to SARS-CoV-2.  Documentation of all relevant facts (*i.e.*, timeline) leading up to the observation shall be maintained in the file.

Unprogrammed inspections shall be inspected using either on-site or a combination of on-site and remote methods, except under circumstances where an on-site inspection cannot be conducted safely.  In such cases, Area Offices will document the unsafe condition(s) preventing an on-site inspection and with AD approval, an alternate inspection process may be used so that the inspection can be done safely within the context of the situation.  Remote-only inspections may be conducted with AD's approval to assure that SARS-CoV-2 hazards alleged in complaints, referrals, fatality reports, etc., are expeditiously investigated and abatement can be implemented as soon as possible.

2.    Follow-up Inspections.

Initial follow-up inspections should be conducted for establishments that were previously inspected as a result of a COVID-19-related fatality and were issued citations.  Additional follow-up inspections should be conducted for any establishment receiving deferred violations (OIS Code: N-10-ABATEMENT DEFERRED), then for establishments receiving serious violations related to COVID-19 hazards or in some cases, other-than-serious citations as explained in Section XII. B.3.

Area Directors may also use discretion in selecting establishments for follow-up inspections where any of the following applies:

a.    The establishment previously received an other-than-serious recordkeeping and reporting violation(s) related to COVID-19; or

b.    A previously inspected employer allegedly continues to expose employees to SARS-CoV-2, or has not fully and properly implemented required engineering controls, work practices, and respiratory protection noted in the abatement certification, within the time period specified; or

c.    If there are any violations for which abatement has not been provided.

Follow-up inspections should be conducted to determine if the previously identified COVID-19 hazards have been corrected or to verify the accuracy of abatement information provided.  Follow-up inspections are to be conducted in accordance with FOM, Chapter 3, Section VII.K. *Follow-up and Monitoring Inspections*, based on available resources and using either on-site or a combination of on-site and remote methods.

For situations where follow-ups cannot be performed (*e.g.*, where CSHOs are unable to conduct an on-site inspection without exposure to suspected or confirmed COVID-19 employees and/or residents), the Area Director, when possible, may require that the employer provide written updates documenting the progress of abatement efforts, per 29 CFR § 1903.19. The Area Office does not need to send abatement verification to the Directorate of Enforcement Programs (DEP) in the National Office, but such documentation shall be available to DEP on request.

If resources allow, follow-up inspections/investigations may also be initiated to verify abatement of hazards identified in Hazard Alert Letters for COVID-19-related hazards.

3.    Programmed Inspections.

a.    High-hazard Industries.

Area Offices should continue prioritizing COVID-19 fatalities, complaints, and referrals for inspection.  In addition, a list of healthcare and non-healthcare industries with NAICS codes having

11

among the highest numbers of OSHA-recorded fatalities, complaints, referrals, inspections, COVID-19-related violations and Hazard Alert Letters issued since February of 2020 is provided in Appendix A.

b.   Site-Specific Targeting (SST).

If an establishment selected for inspection under this NEP is also selected under the current SST plan, then, whenever possible, NEP and SST plan inspections should be conducted concurrently.  Refer to OSHA Instruction, CPL 02-01-062, *Site-Specific Targeting (SST)* (or current version).

c.   Sites selected for programmed inspections shall be inspected using either on-site or a combination of on-site and remote methods. Refer to Appendix C for additional guidance related to CSHO safety.

4.   Whistleblower Protections.

Presidential Executive Order on Protecting Worker Health and Safety, January 21, 2021, directs OSHA to focus its enforcement efforts related to COVID-19 on industries that put the largest number of workers at increased potential exposures to COVID-19, and on employers that engage in retaliation against employees who complain about unsafe or unhealthful conditions or exercise other rights under the Act.  As such, this NEP will include an added focus of ensuring that workers are protected from retaliation through information sharing and prompt referrals.

Workers requesting inspections, complaining of SARS-CoV-2 exposure, or reporting injuries or illnesses or retaliation, may be covered under one or more whistleblower protection statutes.  Inform the workers of their protections from retaliation and refer them to www.whistleblowers.gov for more information, including how to file a retaliation complaint.  If the worker is alleging some form of retaliation, the Area Office must submit a referral to the Regional Whistleblower Protection Program.

5.   Cooperative Programs.

Employers participating in cooperative programs may be exempt from programmed inspections.  After inspection lists are generated, the Area Office should contact the Cooperative and State Programs Unit in their Regional Office to determine if any company on the list should be exempted.  The CSHO should follow the procedures outlined in FOM Chapter 2, Program Planning, for further guidance if an on-site consultation visit is in progress, or if the establishment is a participant in OSHA's Voluntary Protection Programs (VPP) or the Safety and Health Achievement Recognition Program (SHARP) or Pre-SHARP.  Even if an employer is exempt from a programmed inspection, the Area Office

should notify the employer in writing that they are required to comply with all applicable OSHA standards and the General Duty Clause.  In such cases, the Regional Consultation Program Officer shall follow-up with the responsible Consultation Program Manager.

D.   <u>Inspection Procedures</u>.

Inspections are normally not initiated under an NEP until the required 90-day outreach, as similarly required for LEPs and REPs in accordance with OSHA Memorandum on <u>Procedures for Local and Regional Emphasis Programs</u>, December 3, 2014.  However, OSHA has continually conducted outreach at the National, Regional, and Area Office levels throughout the duration of the pandemic outbreak, and since the initial COVID-19 NEP, has added to its outreach efforts to include additional information on the COVID-19 NEP through webinars and conferences at the national and regional levels.  Thus, the 90-day outreach threshold has been met and Area Offices may begin to initiate inspections under this NEP on the effective date.  Programmed inspections may continue to be conducted using the already generated Master Lists from the former NEP.  Both programmed and unprogrammed activities shall continue to be conducted and coded using the appropriate OIS codes, which have not been changed for this revised NEP (see <u>Section XII.F</u>).  The Agency will continue to conduct outreach, per <u>Section XII.G,</u> throughout the NEP's course of implementation while responding to complaints, referrals, hospitalizations, and fatalities related to COVID-19, and shall code such activities in accordance with <u>Section XII.F</u>.  All inspections shall be conducted in accordance with the general provisions of the <u>FOM</u> and, where appropriate, OSHA Direction, <u>DIR 2021-02 (CPL 02)</u>, *Inspection Procedures for the COVID-19 Emergency Temporary Standard*, for healthcare industries (hereafter referred as the ETS CPL), or the <u>Updated Interim Enforcement Response Plan (IERP) for Coronavirus Disease 2019 (COVID-19)</u>, July 7, 2021, for non-healthcare industries, and based on current CDC guidance.  Additionally, to the extent possible, inspections should be conducted in a manner to achieve expeditious issuance of COVID-19-related citations and abatement.  Other general procedures related to preparing for inspections include the following:

1.   Inspections under this NEP shall only be conducted by CSHOs who have reviewed the appropriate safety and health precautions as outlined in the <u>FOM</u> Chapter 3, *Inspection Procedures*, as well as <u>Appendix B</u> and <u>Appendix C</u> of this Direction, and who has complied with Regional safety and health management system (SHMS) policies and procedures to address foreseeable hazards which may arise during the current inspection. Refer to both the ETS CPL and the Updated IERP for more information on CSHO protection and training.

2.   Once an inspection has been scheduled for an identified establishment, and prior to opening the inspection, CSHOs shall conduct a search of the employer's citation and fatality/accident history in OSHA's <u>Establishment Search Page</u> or by using OIS.

13

3.      The CSHO shall also determine whether the identified establishment is scheduled for any other programmed inspection (*e.g.*, SST, NEP, LEP). Whenever possible, inspections under this NEP should be carried out concurrently with other programmed inspections.

4.      At the opening conference, the CSHO will verify the correct NAICS code for the establishment with the employer and determine whether work practices that may result in worker exposures to SARS-CoV-2 are conducted at the facility or worksite.  The CSHO shall review the establishment's injury and illness logs (OSHA 300 and OSHA 300A) for calendar years 2020 and 2021 to date to identify work-related cases of COVID-19.

The CSHO may verify an employer's assertions regarding workplace conditions or worker exposures to SARS-CoV-2 by interviewing employee(s) at the site and use the following guidance:

a.      If a healthcare employer claims exemptions from the COVID-19 ETS and CSHOs are able to verify the employer's claim of either the exemption (based on any of the provisions in section 29 CFR § 1910.502(a)(2); (a)(3) and (a)(4)), or

b.      If a non-healthcare employer has not implemented control measures because all employees are vaccinated, and the CSHO is able to verify the employer's claims that all employees under its control (or all employees in well-defined portions of the workplace), are fully vaccinated, **and**

c.      For both healthcare and non-healthcare employers, it is determined through a review of the injury and illness log, COVID-19 log (for healthcare), and employer or employee interviews that no such work assignments, recorded cases or reports of recent or active work-related COVID-19 infections resulting in lost work time, hospitalizations or fatalities occurred, and the inspection was initiated as a programmed inspection, as outlined in XII.C.3, then the CSHO shall not proceed with the inspection.  No walkaround inspection will be conducted.  Such inspections shall be coded "COVID-19" and closed as a "no inspection".  However, if a CSHO is only able to obtain verification of the employer's exemption after initiating a walkaround inspection, then that inspection shall be closed as "in compliance".

d.      However, if the inspection was initiated by an unprogrammed or follow-up activity, or the establishment is targeted under another NEP or LEP, then the CSHO should proceed with the inspection in order to address additional items alleged or those covered by another emphasis program.  The CSHO will inform the employer of their rights and responsibilities under Section 11(c) of the OSHA Act.  If the unprogrammed activity that initiated this

inspection included an allegation of retaliation, the CSHO shall refer this allegation to the Regional Whistleblower Protection Program.

e.  If the CSHO determines that unvaccinated workers may be performing tasks which include a high frequency of close contact exposures with increased potential exposure to COVID-19 hazards, then the CSHO shall proceed with the inspection following the procedures in this NEP and AD discretion for conducting remote inspections.

5.  All health hazards observed in the course of any inspection conducted under this NEP shall be appropriately addressed and may be referred for a later inspection as resources permit.  For healthcare establishments, other health hazards that may  arise include, but are not limited to: exposure to workplace violence; slips, trips and falls; bloodborne pathogens or other potentially infectious materials; ergonomic hazards (musculoskeletal disorders, MSDs); and Tuberculosis.  *See* OSHA Memorandum, *Inspection Guidance for Inpatient Healthcare Settings* (June 25, 2015).

During inspections, where safety violations have also been alleged or when they are observed in plain view during the walkaround, CSHOs must address and cite where appropriate.  Safety referrals may be made, subject to any current exemptions or limitations on such activity.

CSHOs should be reminded that several targeted industries for the COVID-19 NEP listed in Appendix A were on the annual appropriations exemption list issued January 2021 for Appendix A of CPL 02-00-051, such as, NAICS 621111 Offices of Physicians (except Mental Health Specialists), NAICS 621210 Offices of Dentists, NAICS 621610 Home Health Care Services,  NAICS 561320 Temporary Help Services, NAICS 722511 Full-Service Restaurants, and NAICS 722513 Limited-Service Restaurants.  *See* CPL 02-00-051, *Enforcement Exemptions and Limitations under the Appropriations Act*, Section XI.B.4.b, which provides: "Apparent safety violations noted during a health inspection of an establishment [with 10 or fewer employees] exempted from programmed safety inspections shall not be cited or referred for later inspection unless such violations create an imminent danger."

6.  Citation Guidance: CSHOs shall consult references within this Direction, any internal guidance on Enforcement for COVID-19 available on the DEP intranet page, the ETS for COVID-19, and current CDC recommendations and guidelines in evaluating whether any OSHA standards or the General Duty Clause, Section 5(a)(1), have been violated and if a citation is warranted.

Because the use of respirators or other personal protective equipment may not completely protect against the SARS-CoV-2 virus, employers have obligations under the ETS for COVID-19, and where this standard does

15

not apply, the General Duty Clause [Section 5(a)(1) of the OSH Act], to take further measures where standards alone may not provide adequate protection.  Where all the elements for a General Duty Clause violation can be established, the Area Director, in consultation with their Regional and National Offices and the Solicitor of Labor's Regional and National Offices, shall consider issuing a citation.  The most current CDC recommendations/ guidelines at the time of employee exposure relating to COVID-19 should be consulted as one source of evidence of hazard recognition and potential feasible means of abatement.

In all cases where the Area Director determines that an OSHA standard has been violated or a condition exists warranting issuance of a 5(a)(1) violation for an occupational exposure to the SARS-CoV-2 virus, the Regional Office shall follow current National Office guidance pertaining to citation issuance.

The ETS is enforceable on July 6, 2021, for most provisions, and July 21, 2021, for the three provisions for protective barriers, ventilation, and training.  The provisions of the ETS will take precedence over citations of the general duty clause for healthcare establishments not exempt from the ETS.

7. Establishments with more than one location engaged in the same or similar types of operations, may also have employees who are potentially exposed to COVID-19-related hazards at other locations.  Compliance officers should consult with Area and Regional Offices to provide a letter to the corporate entities of such establishments, informing them of the COVID-19-related OSHA inspection.  Refer to Appendix D of this Direction for a sample letter to employers.

8. The CSHO will inform workers of their right to file a whistleblower complaint if they experience retaliation for providing assistance to OSHA during an inspection, filing a safety and health complaint with OSHA, reporting a work-related injury or illness, or complaining about SARS-CoV-2 exposure or any other workplace hazards to management, and must promptly refer any complaint of alleged retaliation to the Regional Whistleblower Protection Program.

E. CSHO Protection

1. In accordance with the Presidential Executive Order 13991 on Protecting the Federal Workforce and Requiring Mask-Wearing, January 20, 2021 and the OMB memorandum, M-21-15, January 24, 2021, which gives OSHA the ability to provide exceptions consistent with CDC guidelines, to protect the Federal workforce and individuals interacting with the Federal workforce, and to ensure the continuity of Government services and activities, all on-duty or on-site Federal employees, on-site Federal contractors, and other individuals in Federal buildings and on Federal lands {that are not fully vaccinated are required to wear face coverings

16

(*i.e.*, ~~cloth face coverings or surgical masks), maintain physical distance, and~~ adhere to ~~other~~} public health measures, as provided in CDC guidelines{, and agency policies as they are updated}.  Additional information on worker protection can be found in OSHA Guidance, *Protecting Workers: Guidance on Mitigating and Preventing the Spread of COVID-19 in the Workplace*, {~~posted January 29, 2021, and updated on June 10, 2021,~~} the ETS CPL, the Updated IERP, July 7, 2021, and based on current CDC guidance**.**

2.      Where CSHOs are performing an on-site inspection, they must observe all appropriate precautions for distancing, PPE use, hygiene, etc., as described in the ETS CPL, the Updated IERP, and any Regional policies.  OSHA's internal policies relative to CSHO protections during inspections may be updated based on further updates to CDC guidance and COVID-19 vaccination status.  Supervisors shall ensure CSHOs comply with all COVID-19-related SHMS guidance and requirements developed as part of the ADM 04-00-003, *OSHA Safety and Health Management System*.

3.      All personnel engaged in on-site inspection-related activities must wear appropriate respiratory protection where they are needed, or use face coverings {~~at a minimum~~} when {required by agency policy ~~not fully vaccinated~~}.  This Direction permits the voluntary use of fit tested N95 FFRs by OSHA staff during inspection-related activities**.**  For voluntary use of filtering facepiece respirators, CSHOs must be provided a copy of Appendix D of the OSHA Respiratory Protection Standard 29 CFR § 1910.134.

4.      Respirators shall be selected and used in accordance with the respirator selection procedures in CPL 02-02-054, *Respiratory Protection Program Guidelines*, and all requirements of the OSHA Respiratory Protection Standard (*i.e.*, medically evaluated, fit-tested) shall be followed.

5.      CSHOs shall also protect themselves against all non-COVID-19 hazards during an inspection and must use additional personal protective equipment as necessary to protect themselves from hazards (*i.e.*, gloves, goggles).  Additional CSHO precautionary guidance and inspection tools are provided in Appendix B and Appendix C of this Direction.  *See* FOM Chapter 3, Section II.C, *Safety and Health Issues Relating to CSHOs*.  *See also* ADM 04-00-003, *OSHA Safety and Health Management System*.

F.      OSHA Information System (OIS) Coding Instructions.

All enforcement activities (*i.e.*, inspections, complaints, and referrals, etc.) and compliance assistance interventions conducted under this revised NEP shall continue to be coded as "COVID-19" under the NEP Code field.  Under the former NEP this code replaced the previous "N-16-COVID-19" in the Additional Code field for Federal inspections and inspections by State Plan offices that adopted the NEP.  This NEP code shall be applied even if the establishment was

17

not among the targeted NAICS listed in the appendices, as long as COVID-19-related hazardous conditions were investigated.

Since State Plans are required to adopt this revised NEP, upon adoption they shall discontinue use of the "N-16-COVID-19" in the Additional Code field. Additionally, inspections conducted under this NEP are to be coded under Inspection Category as a "Health" inspection unless the inspection was initiated as an unprogrammed safety inspection where no COVID-19 related hazards were initially alleged, but were later found during the course of the inspection. In such a case, the inspection should be coded under Inspection Category as a "Safety" inspection.

Whenever a consultation request/visit is made related to this NEP, the NEP code "COVID-19" shall be recorded in the appropriate field on the Consultation request/visit forms.

CSHOs should identify any COVID-19 violations or HALs using the Related Event Code (REC) field under the Additional Information Section in the violation screen. CSHOs should select "COVID-19" in the Related Event Code section. If applicable, other Related Event Codes should also be selected to relate the violation or HAL to the fatality, complaint, referral, etc. *The COVID-19 Related Event Code is in addition to the other COVID-19 coding required.*

**NOTE**: Until further notice, the agency will continue to track inspections conducted entirely remotely for COVID-19-related complaints, referrals, or fatalities. When an inspection is conducted entirely remotely, CSHOs shall enter the code "N-10-COVID-19 REMOTE" under the Additional Codes section in OIS for all COVID-19 related inspections that are conducted completely offsite, in addition to the code, COVID-19, for the NEP. In addition, Regions shall also retroactively code (if not previously done) all COVID-19-related remote inspections conducted since February 1, 2020. State Plans are strongly encouraged to begin or continue using the N-10-COVID-19 REMOTE code as well, so that data can be gathered on a nationwide basis.

Table 1, below, provides a summary of all COVID-19-related OIS codes including additional codes to be used by On-Site Consultation programs during the Pandemic.

**Table 1.  List of OIS codes for COVID-19-related inspections/activities**

| OIS Field | OIS Codes | Activity Type |
|---|---|---|
| NEP | COVID-19 | All enforcement and compliance assistance activities conducted under this NEP (complaints, fatalities, referrals, inspections, etc.) |
| Additional Code | N-16-COVID-19 | Code will continue to be used only by those State Plans that did *not* implement the former NEP, but after adoption of this revised NEP, it should not be used by SP offices. |
| Additional Code | N-10-COVID-19 REMOTE | Code used for COVID-19- related inspections that are conducted completely off site |
| Additional Code | N-10-ABATEMENT DEFERRED* | Inspections of establishments where there were hazards that would normally have been cited, but enforcement discretion was used to defer issuance of violation for COVID-19-related hazards (refer to Section XII.C.2. for further guidance) |
| Related Event Code (REC) | COVID-19 | All COVID-19-related violations and HALs |
| Additional Code: On-Site Consultation | N-30-Abatement Suspension Virus | On-Site Consultation should use this code when abatement cannot be verified due to suspension of activity as a result of the Pandemic |
| Additional Code: On-Site Consultation | N-30-Virtual | On-Site Consultation programs should use this code for visits that are conducted virtually as a result of the Pandemic. |
| Additional Code: On-Site Consultation | N-30-SHARP/TEMP CLOSURE | On Site Consultation programs should use this code for SHARP sites, at which their approval period cannot be reevaluated and extended due to the Pandemic. |

***NOTE:** This code was implemented in the early stages of the pandemic and should no longer be used to address enforcement discretion for cases where **recently rescinded** respiratory protection discretion memoranda were used.

    G.  Outreach.

1.    Offices.

As discussed above, at the beginning of Section XII.D, each Area Office shall continue conducting outreach programs concerning COVID-19, including new guidance and this revised NEP, in accordance with OSHA Memorandum on Procedures for Local and Regional Emphasis Programs, December 3, 2014.  The National Office shall continue to conduct nationwide outreach upon issuance of this revised NEP, using public announcements and communications to media, stakeholders, and alliances.

2.    Suggested Local Outreach.

Products and activities may include the following:

a.    Letters and news releases announcing implementation of the updated COVID-19 NEP.  Include information about no-cost On-Site Consultation services available to small businesses.

b.    Seminars on COVID-19-related topics, tailored for specific audiences, such as employers, employee groups and unions in industries such as but not limited to healthcare, meat and poultry, correctional institutions.  Local organizations and groups can be invited to participate.

c.    Working with national and regional offices of federal agencies with similar outreach goals, such as CMS, Equal Employment Opportunity Commission (EEOC), USDA, Wage and Hour Division (WHD), to disseminate information on the NEP, and the pandemic's effects on vulnerable and disadvantaged workers.

d.    Working with existing cooperative programs, such as partnerships and alliances, including disseminating information on the NEP and sharing successes and technical information on effective means to control and reduce or eliminate worker exposure to SARS-CoV-2.

e.    Forming new working relationships, including partnerships and alliances, and more informal working relationships with organizations that can help disseminate information to small businesses and other employers.

f.    Working with On-Site Consultation programs, local Small Business Development Centers (SBDC), and other organizations to reach small businesses.

g.    Sharing information on the rights of workers and responsibilities of employers for maintaining a workplace free from retaliation. This includes whistleblower protections and anti-retaliation principles. The Recommended Practices for Anti-Retaliation Programs can be used as a resource and outreach tool.

h.    For more outreach ideas, see the OSHA COVID-19 webpage.

20

3.      Targeted Audiences for Outreach.

    a.      Local employers in high-hazard industries.  *See also* targeted industries in Appendix A.

    b.      Local worker groups and unions.

    c.      Local employer associations (*e.g.*, a local chamber of commerce).

    d.      Insurance companies.

    e.      Local hospitals, occupational health clinics, and other health organizations (*e.g.*, state lung associations).

    f.      Local professional associations (*e.g.*, local safety councils and dental or medical groups).

    g.      Temporary employment agencies providing employees to targeted employers (*e.g.*, visiting nurses and per diem staff).

    h.      Local newspapers, TV stations, trade magazines (these can help inform the public and hard-to-reach employers).

    i.      Local government (*e.g.*, health departments, departments of correction, and departments of transportation).

    j.      Local suppliers of materials or services, equipment transportation companies.

4.      Online Materials.

OSHA resources may be of assistance in this outreach effort.  A variety of online resources can be accessed through OSHA's public webpage, including the OSHA COVID-19 Safety and Health Topics Page (www.osha.gov/coronavirus).  Internal resources for COVID-19 are also available on the OSHA intranet.

H.      Coordination.

1.      National Office.

This NEP will be coordinated by the Directorate of Enforcement Programs (DEP), Office of Health Enforcement (OHE).  All questions and comments regarding this NEP should be directed to OHE.  For inspection support, Area and Regional Offices may also coordinate, as needed, with the Directorate of Technical Support and Emergency Management (DTSEM), the Office of Occupational Medicine and Nursing (OOMN), the Health Response Team (HRT), and other offices.  For questions about outreach support and resources, contact the Office of Outreach Services and Alliances (OOSA) in the Directorate of Cooperative and State Programs (DCSP).

2.      Regional Office.

Each Regional Administrator is required to identify a coordinator for this NEP who will work with the Office of Health Enforcement.

I.    Program Review.

To assess the effectiveness of this NEP, DEP will review the NEP within six months of issuance, per ADM 03-00-003, to determine whether the policy contained herein will be continued, and take steps to assure its replacement with a cleared Instruction, if needed, as soon as possible.  Regions that implement related LEPs and REPs should forward any periodic reports to OHE.  The program review reports shall, at a minimum, address the NEP goal (*see* Section XI) in accordance with established Agency procedures.  Data on effectiveness may include:

1.    The number of employees covered by the inspection.

2.    The number of workers removed from hazards.

3.    Abatement measures implemented.

4.    Number of violations related to specific targeted hazards.

5.    Any indices that relate directly to measures that may be included in the DOL Strategic Plan and/or the OSHA Operating Plan.

6.    Total number of prosecutable, COVID-19-related violations of OSHA standards (including final citations resulting from the settlement or litigation of contested cases).

**APPENDIX A:  Target Industries for the COVID-19 NEP**

Appendix A provides lists of NAICS codes in general industry from the public COVID-19 Enforcement Data (*e.g.*, complaints, FAT/CAT, referrals, inspections, COVID-19-related violations and HALs) where OSHA data shows the highest amount of workers expected to perform tasks associated with exposure to SARS-CoV-2.  Tables 1 and 2 in this appendix comprise the NAICS codes for top healthcare and non-healthcare industries, respectively, with OSHA enforcement activities related to COVID-19 over the past year.

**NOTE:** Employee exposures to COVID-19-related hazards may occur in industries not listed in this Appendix.  Similarly, it should not be assumed that employee exposure to COVID-19 occurs in all establishments within the industries listed in the tables below.

For certain industries not included in ListGen (*e.g.,* NAICS 491110, 611111, 621210, 621610, 722511, 722513, and 922140), alternative sources may be utilized (*e.g.,* ReferenceUSA).

**Table 1. Targeted Industries in Healthcare by 2017 NAICS**

| NAICS Code | Industry |
|---|---|
| 621111 | Offices of Physicians (except Mental Health Specialists)* |
| 621210 | Offices of Dentists* |
| 621610 | Home Health Care Services* |
| 621910 | Ambulance Services |
| 622110 | General Medical and Surgical Hospitals |
| 622210 | Psychiatric and Substance Abuse Hospitals |
| 622310 | Specialty (except Psychiatric and Substance Abuse) Hospitals |
| 623110 | Nursing Care Facilities (Skilled Nursing Facilities) |
| 623210 | Residential Intellectual and Developmental Disability Facilities |
| 623311 | Continuing Care Retirement Communities |
| 623312 | Assisted Living Facilities for the Elderly |

**Table 2. Targeted Industries for non-Healthcare by 2017 NAICS**

| NAICS Code | Industry |
|---|---|
| 311612 | Meat Processed from Carcasses |
| 311611 | Animal (except Poultry) Slaughtering |
| 311615 | Poultry Processing |
| 445110 | Supermarkets and Other Grocery (except Convenience) Stores |
| 452210/452311 | Discount Department Stores** |
| 491110 | Postal Service* |
| 493110 | General Warehousing and Storage |
| 561320 | Temporary Help Services*** |
| 722511 | Full-Service Restaurants* |
| 722513 | Limited-Service Restaurants* |
| 922140 | Correctional Institutions (Public Administration Sector)* |

*NOTE:  For certain industries such as Home Health Care Services NAICS 621610, Offices of Physicians (except Mental Health Specialists) NAICS 621111, Offices of Dentists NAICS 621210, Postal Service NAICS 499110, Full-Service Restaurants, NAICS 7224511, Limited-Service Restaurants NIACS 722513, and Correctional Institutions (Public Administration Sector) NAICS 922140, some of which have had a large number or high rate of COVID-19-related complaints in some communities during 2020, Area Directors should use discretion based on local information pertaining to COVID-19-related workplace exposures, to determine whether they should be considered in the generating of their master lists of establishments.  These industries are not automatically included in the Office of Statistical Analysis (OSA) targeting lists for programmed inspections. Additionally, the private and contractor-run sectors that are equivalent for Correctional Institutions fall under NAICS 561210 and can similarly be targeted based on local knowledge.

**NOTE: For Discount Department Stores, the 2012 NAICS, 452112, has changed.  Area offices should be aware that these establishments may now be classified under either of two new 2017 NAICS, 452210 (Department Stores) or 452311 (Warehouse Clubs and Supercenters), depending on whether they have significant perishable grocery sales.

***NOTE:  Establishments within the Temporary Help Services (NAICS 561320) industry should not be automatically included in the targeting list for programmed inspections. Although this industry has been among the top industries with OSHA enforcement activities related to COVID-19, this has primarily occurred where services occurred at host healthcare facilities and other high-hazard workplaces. Therefore, to effectively address SARS-CoV-2 hazards for Temporary Help Services, where OSHA is conducting an inspection for other purposes, a COVID-19-related inspection shall be opened for all hazardous conditions observed in plain view (such as, for example, temporary employees working in high exposure areas without adequate PPE).

Appendix A-2

**APPENDIX B:  CSHO Pre-Inspection Checklist**

Here are some things to consider before proceeding with any inspection:

☐ Ensure the availability and use of all necessary and appropriate respiratory protection or face coverings.

☐ Ensure all PPE, inspection equipment, and media are retrievable and ready for use.

☐ Review any relevant cleaning procedures for equipment and the vehicle, government (GOV) or personal (POV).

☐ For all COVID-19 inspections, the manager/supervisor/CSHO, in consultation with designated regional office staff, will develop and document a risk assessment that includes an exposure control plan, Job-Hazard Analysis, and PPE hazard assessment prior to entry and update it as necessary for each inspection, to include individual inspection risks that may not otherwise be captured in a general or overall worksite assessment. Individual inspection risks may be based on factors such as industry type, on-site hazard location, or local infection rate.

☐ Ensure GOV or POV is road-ready to include gas/fuel, first aid kit, hand sanitizer, disinfecting wipes, or other cleaning and/or disinfecting agents (as required), and bags to dispose of contaminated PPE and used disinfecting wipes.

☐ Develop a document request letter in advance of the opening conference (*e.g.* programs, OSHA Form 300/300A, and summaries) to be provided to the employer during the opening conference if needed.

**NOTE**: OSHA's internal policies relative to CSHO protections during inspections may be updated based on further updates to CDC guidance and COVID-19 vaccination status.

**APPENDIX C:  General Safety & Health Inspection Precautions for Compliance Staff**

**NOTE**:  Refer to Attachment 1, Section III, of the Updated Interim Enforcement Response Plan for Coronavirus Disease 2019 (COVID-19), July 7, 2021, as well as Chapter XIV of the Inspection Procedures for the COVID-19 Emergency Temporary Standard, DIR 2021-02 (CPL 02), and other agency personnel guidance for more information on CSHO protection and training.  **OSHA's internal policies relative to CSHO protections during inspections may be updated based on further updates to CDC guidance and COVID-19 vaccination status.**

- CSHOs should self-disclose if there is reason they are not able to do the inspection, consistent with the criteria in OSHA's Updated Interim Enforcement Response Plan, July 7, 2021, and CDC guidance (they do not need to identify the specific reason).
- CSHOs may voluntarily share information about their general health and/or vaccination status with managers without delving into any protected health information and this may be used in assigning inspections.  Refer to the current agency policy for the most up-to-date information regarding employee vaccination status.
- It is important for compliance staff to practice respiratory etiquette (*e.g.* cough into your elbow crease, tissue, or handkerchief) and take any necessary steps to isolate from other employees and contractors if they are sick.  Compliance staff should also follow regional and agency policies as well as guidelines set forth by the CDC to prevent the spread of SARS-CoV-2.
- {All ~~unvaccinated, not fully vaccinated, or otherwise at-risk~~ CSHOs are required to ~~wear a face covering (*i.e.*, cloth face coverings or surgical masks) at a minimum and maintain physical distance; and must~~ adhere to ~~other~~} public health measures, as provided in CDC guidelines{, and agency policies as they are updated}.  Unvaccinated CSHOs are encouraged, to the extent possible, to travel to inspection sites separately.
- CSHOs may contact the facility administrator via telephone when arriving and request they be admitted through an area with low or no patient access or enter through the lobby area.  Where on-site inspections are conducted, unvaccinated or otherwise at-risk CSHOs shall maintain 6 feet of distance from employees, avoid interviewing multiple employees in the same area, and may consider conducting interviews by phone or outside of the facility.
- Should the CSHO determine an employee interview is necessary with an individual who has a known positive test result, recent exposure, or active SARS-CoV-2 case, the CSHO should embrace the use of technology to facilitate the employee interview.  For example, interviews may be conducted via video conferencing methods.
- Leave unnecessary equipment in the vehicle and retrieve only if necessary.
- Place inspection equipment and materials in plastic bags when possible to prevent contamination.
- CSHO will query the facility regarding infection control procedures in place as well as site-specific PPE requirements.
- Follow any specific safety procedures the facility may have in place.
- In hospitals or healthcare settings, CSHOs should avoid areas in the facility where acute

patient care operations are underway such as the Emergency Department, Outpatient Clinics, and waiting room areas.

- If all alternative measures are exhausted and CSHOs believe they must enter one of the aforementioned areas, they shall contact their Area Director/Assistant Area Director for further guidance to determine whether to continue with an on-site inspection or move to remote means.

**Appendix D: Sample Employer Letter to Corporate Offices for COVID-19 Activities**

Bracketed and/or italicized comments are for OSHA compliance use only and should be removed when appropriately completed with the case-specific information.

RE: OSHA Inspection No. [ ]

Dear Employer:

On **[Date]**, the Occupational Safety and Health Administration (OSHA) conducted an inspection and evaluation of your worksite at **[Location]** for hazards related to potential exposure to SARS-CoV-2 (severe acute respiratory syndrome coronavirus 2), which is the virus causing coronavirus disease 2019 (COVID-19).

During the inspection, OSHA determined that hazards were found in violation of the OSHA standards, resulting in the issuance of COVID-19-related [citations or a Hazard Alert Letter] to **[Company]**. A copy of the [citations and/or letter] is attached.

Based on the guidelines of the Centers for Disease Control and Prevention (CDC) (cited below), it is recommended that employers take the necessary precautions to materially reduce employees' exposure to COVID-19-related hazards.

Because you have other establishments that could present similar hazards, the Occupational Safety and Health Administration is recommending that you conduct a hazard assessment for potential hazards in your other establishment(s). To ensure that COVID-19-related hazards are promptly identified and addressed at your other locations, please facilitate immediate corrective action where needed. OSHA recommends that you also institute additional protective measures and review the safety and health practices of your worksites to ensure consistency with CDC recommendations and compliance with applicable OSHA standards. Depending on potential hazards revealed in your hazard assessment, adherence to several OSHA requirements may be necessary to eliminate or reduce employee exposures to SARS-CoV-2, including:

- 29 CFR § 1910.502 Healthcare (COVID-19 Emergency Temporary Standard)
- 29 CFR § 1910.504 Mini Respiratory Protection Program (COVID-19 Emergency Temporary Standard)
- 29 CFR Part 1904, Recording and Reporting Occupational Injuries and Illness.
- 29 CFR § 1910.132, General Requirements - Personal Protective Equipment.
- 29 CFR § 1910.134, Respiratory Protection.
- 29 CFR § 1910.141, Sanitation.
- 29 CFR § 1910.145, Specification for Accident Prevention Signs and Tags.
- 29 CFR § 1910.1020, Access to Employee Exposure and Medical Records.
- Section 5(a)(1), General Duty Clause of the OSH Act.

OSHA's Bloodborne Pathogens standard (29 CFR § 1910.1030) applies to occupational exposure to human blood and other potentially infectious materials that typically do not include respiratory

secretions that may contain SARS-CoV-2 (unless visible blood is present). However, the provisions of the standard offer a framework that may help control some sources of the virus, including exposures to body fluids (*e.g.*, respiratory secretions) not covered by the standard. Information about these and other OSHA requirements can be found on OSHA's website at www.osha.gov/laws-regs.

OSHA's website, www.osha.gov, offers a wide range of safety and health-related guidance in response to the needs of the working public, both employers and employees. The following guidance may help employers prevent and address workplace exposures to pathogens that cause acute respiratory illnesses, including COVID-19 illness. The guidance includes descriptions of the relevant hazards, how to identify the hazards, and appropriate control measures. Additional resources are provided that address these supply issues and contain industry-specific guidance.

1. For OSHA's latest information and guidance on the COVID-19 outbreak, please refer to OSHA's COVID-19 Safety and Health Topics Page, located at www.osha.gov/coronavirus.
2. [ Add additional OSHA links, as needed, for industry specific guidance, such as one or more of those listed on the OSHA website. ]

The CDC also maintains a website that provides information for employers concerned about COVID-19 infections in the workplace.  The CDC has provided specific guidance for businesses and employers at the following CDC webpage, which is updated regularly: www.cdc.gov/coronavirus/2019-ncov/community/organizations/businesses-employers.

1. For general information and guidance on the COVID-19 pandemic, please refer to the CDC's main topic webpage at www.cdc.gov/coronavirus/2019-ncov.
2. CDC, NIOSH / COVID-19 Information for the Workplace at www.cdc.gov/niosh/emres/2019_ncov.html?deliveryName=USCDC_308-DM26149#anchor_1581538374968l.
3. [Add additional CDC links, as needed, for industry specific guidance, such as one or more of those listed on the CDC website.]

The CDC recommends employers take important steps to prevent the spread of COVID-19.  Up-to-date guidance can be found at www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.

We strongly urge you to share this letter with all of the worksites within your corporation, as well as with representatives of any recognized employee union or safety committee that may exist at your facilities.

Please note that Section 11(c) of the Occupational Safety and Health Act protects employees against retaliation or adverse action because of their involvement in protected safety and health related activity.

If you have questions regarding this issue, you may contact me at the address in the letterhead. I appreciate your personal support and interest in the safety and health of your employees.

Appendix D-2

Sincerely,


**[Enter AD name]**
Area Director

Appendix D-3

**APPENDIX E:  Additional References**

1. Presidential Executive Order on Protecting the Federal Workforce and Requiring Mask-Wearing (January 20, 2021): www.whitehouse.gov/briefing-room/presidential-actions/2021/01/20/executive-order-protecting-the-federal-workforce-and-requiring-mask-wearing

2. OSHA's archived respiratory protection enforcement memoranda for COVID-19 (March 2020 to October 2020): www.osha.gov/laws-regs/standardinterpretations/archive/publicationdate/2020

3. OSHA Memorandum, Interim Enforcement Procedures for New Recordkeeping Requirements Under 29 CFR 1904.35 (November 10, 2016): www.osha.gov/laws-regs/standardinterpretations/2016-11-10

4. OSHA National News Release, U.S. Department of Labor Reminds Employers That They Cannot Retaliate Against Workers Reporting Unsafe Conditions During Coronavirus Pandemic (April 4, 2020): www.osha.gov/news/newsreleases/national/04082020

5. OSHA Publication, Ten Steps All Workplaces Can Take to Reduce Risk of Exposure to Coronavirus (Poster) (OSHA pub 3994/3995): www.osha.gov/Publications/OSHA3994.pdf

6. OSHA Publication, Guidance on Social Distancing at Work (OSHA pub 4027/4028): www.osha.gov/Publications/OSHA4027.pdf

7. OSHA Publication, Whistleblower: Recommended Practices for Anti-Retaliation Program (OSHA pub 3905): www.osha.gov/Publications/OSHA3905.pdf

8. OSHA Safety & Health Topics Page, Frequently Asked Questions – Cloth Face Coverings: www.osha.gov/coronavirus/faqs#cloth-face-coverings

9. CDC, Hospital Preparedness Assessment Tool: www.cdc.gov/coronavirus/2019-ncov/downloads/hospital-preparedness-checklist.pdf

10. CDC, Cleaning and Disinfecting Your Facility: www.cdc.gov/coronavirus/2019-ncov/community/disinfecting-building-facility

11. CDC, Reopening Buildings After Prolonged Shutdown or Reduced Operation: www.cdc.gov/coronavirus/2019-ncov/php/building-water-system

12. CDC, For Specific Industries and Occupations: www.cdc.gov/coronavirus/2019-ncov/community/workplaces-businesses/specific-industries

13. CDC, NIOSH Emergency Preparedness and Response Program/ COVID-19 Information

for the Workplace: www.cdc.gov/niosh/emres/2019_ncov

14. Centers for Medicare and Medicaid Services (CMS), Opening Up America Again: www.cms.gov/files/document/covid-flexibility-reopen-essential-non-covid-services.pdf [This reference may have become an archive document but may be used for historical content, for research and review purposes only.]

15. Environmental Protection Agency (EPA), Guidance on disinfectants, water and wastewater: www.epa.gov/coronavirus

16. EPA, List N: Disinfectants for Use Against SARS-CoV-2: www.epa.gov/pesticide-registration/list-n-disinfectants-use-against-sars-cov-2

17. EPA, Guidance for Cleaning and Disinfecting Public Spaces, Workplaces, Businesses, Schools and Homes: www.epa.gov/coronavirus/guidance-cleaning-and-disinfecting-public-spaces-workplaces-businesses-schools-and-homes

18. Federal Emergency Management Agency (FEMA), Coronavirus (COVID-19) Response: www.fema.gov.coronavirus

News Releases  /  OSHA extends National Emphasis Program to protect high-risk workers from coronavirus

 # OSHA Trade Release

U.S. Department of Labor
Occupational Safety and Health Administration
Office of Communications
Washington, D.C.
www.osha.gov
For Immediate Release

June 30, 2022
Contact: Office of Communications
Phone: 202-693-1999

## OSHA extends National Emphasis Program
## to protect high-risk workers from coronavirus

**WASHINGTON –** The U.S. Department of Labor's Occupational Safety and Health Administration is extending its Revised National Emphasis Program for COVID-19 until further notice. The program focuses enforcement efforts on companies that put the largest number of workers at serious risk of contracting the coronavirus, and on employers who engage in retaliation against workers who complain about unsafe or unhealthful conditions or exercise other rights under the Occupational Safety and Health Act.

OSHA is also temporarily increasing the coronavirus inspection goal from 5 percent of inspections to 10 percent, while it works to finalize a permanent coronavirus health care standard. The program was set to expire July 7, 2022.

The Centers for Disease Control and Prevention has reported increasing coronavirus hospitalization rates nationwide since mid-April, and data forecasts that hospitalizations may increase significantly in the coming weeks. This increase in hospitalizations reinforces the need for OSHA to continue prioritizing inspections at workplaces with a higher potential for coronavirus exposures, such as hospitals, assisted living facilities, nursing homes, and other healthcare and emergency response providers treating patients with coronavirus.

First launched in March 2021, the National Emphasis Program will also continue to cover non-healthcare industries, such as meat and poultry processing.

From March 2021 to March 2022, inspections under the revised program accounted for 7 percent of all federal OSHA inspections, exceeding the national emphasis program's 5 percent goal. Since the beginning of the pandemic in Feb. 2020, OSHA has issued 1,200 coronavirus-related citations to employers and to date assessed current penalties totaling $7.2 million dollars. OSHA has also obtained relief for more than 400 employees who filed coronavirus retaliation claims against employers, exceeding $5 million in monetary awards to employees.

OSHA encourages State Plans to continue implementing an emphasis program for coronavirus inspections that are at least as effective as federal OSHA's Revised National Emphasis Program. Additionally, OSHA continues to work expeditiously toward a permanent standard to protect healthcare workers from coronavirus hazards and an infectious disease standard to ensure that workers are better prepared for any future outbreak.

Exhibit D

Learn more about OSHA's coronavirus resources.

### # # #

U.S. Department of Labor news materials are accessible at http://www.dol.gov. The department's Reasonable Accommodation Resource Center converts departmental information and documents into alternative formats, which include Braille and large print. For alternative format requests, please contact the department at (202) 693-7828 (voice) or (800) 877-8339 (federal relay).

# UNITED STATES
# DEPARTMENT OF LABOR

Occupational Safety & Health Administration
200 Constitution Ave NW
Washington, DC 20210
☎ 800-321-6742 (OSHA)
TTY
www.OSHA.gov

**FEDERAL GOVERNMENT**

White House
Severe Storm and Flood Recovery
Assistance
Disaster Recovery Assistance
DisasterAssistance.gov
USA.gov
No Fear Act Data
U.S. Office of Special Counsel

**OCCUPATIONAL
SAFETY & HEALTH**

Frequently Asked
Questions
A - Z Index
Freedom of Information
Act - OSHA
Read The OSHA
Newsletter
Subscribe to the OSHA
Newsletter

OSHA Publications

Office of Inspector
General

**ABOUT THIS SITE**

Freedom of Information Act - DOL

Privacy & Security Statement

Disclaimers

Important Web Site Notices

Plug-ins Used by DOL

Accessibility Statement

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

IN THE MATTER OF:

Inspection of the workplace
located at and near:                                        Case No. 8:22MJ416

9405 Western Plaza
Omaha, Nebraska 68114

under the control or custody of:

PETERSON PROPERTIES, INC.

### ADMINISTRATIVE SEARCH WARRANT

TO:   Matthew Thurlby
      Area Director
      Occupational Safety and Health Administration
      Omaha Area Office

Application having been made, and reasonable and probable cause having been shown for the inspection of the work place described as Peterson Properties, Inc., and located at 9405 Western Plaza, Omaha, Nebraska 68114.

IT IS HEREBY ORDERED that, pursuant to section 8(a) of the Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651-678, YOU OR YOUR DULY DESIGNATED REPRESENTATIVES ARE AUTHORIZED to enter the above-described workplace during regular working hours or at other reasonable times, to make an inspection of COVID-19 related hazards and any hazards in plain view.

The inspection will include relevant records, including the OSHA 300 Logs for three previous years, files, and papers, and any hazards observed in plain view. The inspection will be conducted during regular working hours or at other reasonable times, within reasonable limits, and in a reasonable manner, including the questioning privately

of any employee or agent, and the taking of photographs, videotape, environmental samples (including the use of personal sampling equipment), and temperature measurements when necessary.  The compliance officer's credentials will be presented, and the inspection will be commenced as soon as practicable after the issuance of this warrant and will be completed with reasonable promptness.

You are hereby directed not to disclose any information obtained during the inspection that is designated to be a trade secret, as defined by 18 U.S.C. § 1905, except that such information may be disclosed to other officers or employees concerned with carrying out the Act or when relevant in any proceeding under the Act.

A return shall be made to this Court showing that the inspection has been completed.  The inspection authorized herein shall be initiated within ten (10) days, and a return shall be made to the Court within fourteen days following completion of the inspection.

DATED:  7/20/2022

MICHAEL D. NELSON
United States Magistrate Judge

## RETURN OF SERVICE

I hereby certify that a copy of the within warrant was duly served on the company named hereon on

_____ (person)

_____(address)

_____

## RETURN

Inspection of the establishment described in this warrant was made on
_____ (date).

_____
Compliance Officer
Occupational Safety and Health Administration
United States Department of Labor